FOR PUBLICATION

ATTORNEYS FOR APPELLANT
: 
ATTORNEYS FOR APPELLEE
:

JAMES J. BELL, AMY BRAUMAN JEFFREY A. MODISETT

Certified Legal Interns
 Attorney General of Indiana

LYNN MCDOWELL
 
PRISCILLA J. FOSSUM

Indiana University School of Law Deputy Attorney General

Criminal Defense Clinic Indianapolis, Indiana

Indianapolis, Indiana

IN THE

COURT OF APPEALS OF INDIANA

ERIC CONWELL, )

)

Appellant-Defendant, )

)

vs. ) No.  49A05-9901-CR-18

)

STATE OF INDIANA, )

)

Appellee-Plaintiff. )

APPEAL FROM THE MARION SUPERIOR COURT

CRIMINAL DIVISION 14

The Honorable David J. Dreyer, Judge

Cause No.  49F14-9809-DF-150929

August 9, 1999

OPINION - FOR PUBLICATION

RUCKER, Judge

In this interlocutory appeal, Appellant-Defendant Eric Conwell requests reversal of the trial court’s denial of his motion to suppress.  Conwell raises two issues for our review which we rephrase as:  1) did probable cause and exigent circumstances exist which justified the warrantless search of Conwell's body, and 2) during their search of Conwell, did the police officers use excessive force in violation of his rights under the Due Process Clause?  We reverse and remand.

On September 16, 1998, Conwell was driving his car in the 2100 block of North Carollton when Indianapolis Police Officer Brad Harvey stopped Conwell for traveling at a high rate of speed and for failing to use his turn signal.  Officer Harvey asked Conwell to get out of his vehicle.  Conwell complied with the request, and Officer Harvey proceeded to handcuff Conwell and his passenger.  Prior to exiting the car, Conwell gave Officer Harvey  his wallet which contained identification.  Upon searching the wallet, Officer Harvey discovered a probation card and asked Conwell why he was on probation.  Conwell responded that he was on probation for possession of narcotics.  Officer Harvey testified at the suppression hearing that the 2100 block of North Carollton was known to be a “high narcotics area and individuals . . . hide their narcotics either in their mouth or in between the  crack of their buttock.”  R. at 55.

Based on this experience, Officer Harvey then requested Conwell to open his mouth and lift his tongue.  Conwell did not reply to Officer Harvey’s request.  However, Officer Harvey observed Conwell begin to make a “chewing motion.”  R. at 55.  Officer Harvey testified that he neither saw Conwell place anything into his mouth nor did he see Conwell chewing on an object.  When Conwell did not respond, Officer Harvey began to choke him so that Conwell could not swallow whatever he was chewing.  The pair struggled until Officer Harvey maced Conwell with CS spray.  The contents of Conwell's mouth were not expunged after this initial macing.  During this time, Officer Smiley arrived and assisted Officer Harvey in spraying a second dose of CS spray on Conwell.  After the second dose of CS spray, Conwell expelled a plastic baggy from his mouth.  

The baggy and its contents were seized.  Testing of the baggy's contents, revealed the items seized to be rock cocaine.  Conwell was arrested and taken to the hospital to be treated for the effects of the CS spray.  He was later charged with possession of cocaine as a Class D felony.
(footnote: 1)  Conwell filed a motion to suppress the introduction of the cocaine as evidence.  The motion was denied after a hearing.  Afterwards, Conwell was granted permission to proceed with this interlocutory appeal. 

Conwell argues that the trial court improperly denied his motion to suppress the drugs seized from the warrantless search of his body.  According to Conwell, Officer Harvey did not have probable cause nor did exigent circumstances exist which would justify choking  him.  We agree.

The trial court has broad discretion in ruling on the admissibility of evidence.  
Drake  v. State
, 655 N.E.2d 574, 575 (Ind. Ct. App. 1995).  We will reverse a ruling on the admissibility of evidence only when it has been shown that the trial court has abused its discretion.  
Carter v. State
, 692 N.E.2d 464, 465 (Ind. Ct. App. 1997).  The decision of a trial  court to deny a motion to suppress is reviewed as a matter of sufficiency.  
Wilson v. State
, 670 N.E.2d 27, 29 (Ind. Ct. App. 1996).  In doing so, we neither judge the credibility of witnesses nor do we reweigh the evidence.  
Carter
, 692 N.E.2d at 465.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  This guarantee provides that searches and seizures which take place without prior judicial authorization are 
per se
 unreasonable pursuant to the Fourth Amendment, subject only to a few, narrow exceptions.  
Shinault v. State
, 668 N.E.2d 274, 276 (Ind. Ct. App. 1996) (citing 
Thompson v. Louisiana
, 469 U.S. 17, 19-20, 105 S. Ct. 409, 410-11, 83 L. Ed. 2d 246 (1984)).  A brief detention is permitted when a police officer believes a person has committed an infraction or an ordinance violation.  
Peete v. State
, 678 N.E.2d 415, 419 (Ind. Ct. App. 1997), 
trans. denied
.  In the present case, Conwell was stopped for driving beyond the maximum speed limit and for failing to signal when making a turn.  Both are violations of Indiana's traffic laws, and the initial stop of Conwell for a brief investigation was permissible.  

However, continued detention without a formal arrest and a warrantless search of one's person must be supported by probable cause and authorized by one of the recognized exceptions to the warrant requirement.  
See
 
Minnesota v. Dickerson
, 508 U.S. 366, 373, 113 S. Ct. 2130, 2136, 124 L. Ed. 2d 334 (1993) (stating that protective search which goes beyond that necessary to ascertain whether suspect is armed is invalid).  The pertinent inquiry regarding probable cause is whether the facts and circumstances at the time of the arrest would lead a reasonably prudent person to believe that the suspect is committing or has committed a crime.  
Adams v. Williams
, 407 U.S. 143, 148, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612 (1972); 
see
 
also
 
Richard v. State
, 482 N.E.2d 282, 285 (Ind. Ct. App. 1985) (finding that probable cause must be established prior to the search and not as a result of the search).  We further note that the facts necessary to show the existence of probable cause for a warrantless search are not significantly different from those needed for judicial authorization to conduct a search.  
Kenner v. State
, 703 N.E.2d 1122, 1125 (Ind Ct. App. 1999), 
reh'g denied
. 

Officer Harvey did not briefly detain Conwell for further questioning.  Rather, he  ordered Conwell out of the car and immediately handcuffed him and his passenger.
(footnote: 2)  Officer Harvey placed a choke hold on Conwell in order to prevent him from swallowing "whatever contents" were in his mouth.  R. at 57.  An assertion that probable cause existed at the time of Officer Harvey's search hinges on Conwell's presence in a high crime area and his being a probationer.  These two facts alone did not give Officer Harvey probable cause to search Conwell.  
See
 
Jackson v. State
, 669 N.E.2d 744, 750 (Ind. Ct. App. 1996) (finding that probable cause did not exist for search where police observed an unidentified individual enter a car upon leaving a well-known crack house and after stopping the car for a traffic violation, noted defendant making "suspicious movements and clench[ing] money in his hand").  In this instance, Officer Harvey never saw Conwell place anything in his mouth, and probable cause was nonexistent without the result of the search.  
See
 
id.
  Because we have found that Officer Harvey lacked probable cause for searching Conwell without a warrant, we are not compelled to address the question of whether exigent circumstances existed.  
Jones v. State
, 409 N.E.2d 1254, 1258 (Ind. Ct. App. 1980) (stating that exigent circumstances are legally insignificant if the search is conducted without probable cause).

Although we have made the determination that Officer Harvey lacked probable cause to initiate a body search of Conwell and reverse the denial of Conwell's motion to suppress on that ground, we elect to address a second issue which Conwell raises.  In his argument, Conwell asserts that his "right to due process of law was violated when the police officer used excessive force and a 'choke hold' to search the inside of [his] mouth."  Brief of Appellant at 6-7.  The State counter argues that the majority of state and federal jurisdictions permit the police to use considerable force in order to prevent a suspect from swallowing the evidence.  We find the State's argument unavailing.

The principal case which discusses due process rights when police force is used to extract physical evidence from the body of a nonconsenting individual is 
Rochin v. California
, 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952).  However, 
Rochin
 was decided before 
Mapp v. Ohio
, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).  In 
Mapp
, the U.S. Supreme Court held that the Fourth Amendment is applicable to the states through the Fourteenth Amendment's Due Process Clause.  
Mapp
, 367 U.S. at 660, 81 S. Ct. at 1694.  Subsequent to 
Rochin
 and 
Mapp
, the United States Supreme Court has analyzed claims of intrusive body searches under the Fourth Amendment.  
See
, 
e.g.
, 
Schmerber v. California
, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966); 
Winston v. Lee
, 470 U.S. 753, 105 S. Ct. 1611, 84 L. Ed. 2d (1985).  The reasonableness of the search is one of the threshold determinations to be made in ascertaining the legality of a body search.  
Schmerber
, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834, 16 L. Ed. 2d 908 (1966).  In 
Winston
, 470 U.S. at 761-62, 105 S. Ct. at 1617-18, a three-part balancing test was announced for determining the reasonableness of a search procedure.  
Winston
 requires that the reasonableness of force used in a body search be measured against (1) the extent to which the procedure used may threaten the safety or health of the individual, (2) the extent of the intrusion upon the individual's dignitary interests in personal privacy and bodily integrity, and (3) the community's interest in fairly and accurately determining guilt or innocence.  
Id.
  Whether a person's right to be free from unreasonable searches has been violated under the Fourth Amendment is dependent on the facts and circumstances of each individual case.  
Schmerber
, 384 U.S. at 772, 86 S. Ct. at 1836.   

When Conwell refused to open his mouth after being requested to do so, Officer Harvey testified that he placed a choke hold on Conwell.  When Conwell did not expel the contents of his mouth, Officer Harvey continued to "apply pressure on him so that he would not sallow[sic]."  R. at 57.  During the time he was being choked, Conwell was twice maced with CS spray before Officer Harvey and Officer Smiley wrestled him to the ground after a ten to fifteen-minute struggle.  "The application of force to a person's throat is a dangerous and sensitive activity.  It is the type of force that, more than any other, is likely to result in violent resistance by the arrestee."  
State v. Hodson
, 907 P.2d 1155, 1158 (Utah 1995) (quoting 
People v. Trevino
, 140 Cal. Rptr. 243, 246 (Cal. Dist. Ct. App. 1977)).  Safer alternatives existed to effect recovery of the evidence.  Conwell could have been taken into custody, and the contents could have been recovered after they passed through his system.  
People v. Jones
, 257 Cal. Rptr. 500, 502 (Cal. Ct. App. 1989); 
State v. Tapp
, 353 So.2d 265, 269 (La. 1977).  Based on these facts, we find that the choke hold is very dangerous, and there was a great risk that Conwell could have been seriously injured by the procedure and ensuing struggle.  The second part of the 
Winston
 test measures intrusions on bodily integrity and dignitary interests.  Officer Harvey choked Conwell and struggled with him for approximately fifteen minutes before wrestling him to the ground.  This procedure was clearly not quick and painless.  We find that the invasion of Conwell's bodily integrity in addition to the health and safety risks were great.

The risk to health and safety and the degree of bodily intrusion are then weighed against the third factor, the need to determine Conwell's guilt or innocence.  In this case this factor translates to an officer's need to preserve the evidence and to protect the defendant from harm.  As noted earlier, Conwell could have been taken into custody, and the drugs would have been allowed to pass through his system or they would have been absorbed into his bloodstream.  
Hodson
, 907 P.2d at 1158.  The evidence could have then been taken from Conwell in a less harmful and violent manner.  Although Officer Harvey claimed that it would be dangerous for Conwell to swallow the cocaine, other courts which have considered this issue have found that this practice does not usually result in adverse affects to one's health.  
Id.
; 
Jones
, 257 Cal. Rptr. at 503; 
Tapp
, 353 So.2d at 269.  We find these grounds unpersuasive as justification for the use of such violent and dangerous means to preserve evidence and therefore find that under these facts, the violation of Conwell's bodily integrity and the health and safety dangers involved were greater than the need to preserve evidence.   The only case in Indiana which discusses the excessive use of force is 
Foxall v. State
, 157 Ind. App. 19, 298 N.E.2d 470 (1973).  In 
Foxall
, police officers had obtained a valid warrant to search defendant's apartment.  Upon discovery of stolen property described in the warrant, the police placed Foxall under arrest.  Prior to searching Foxall, one of the police officers noticed Foxall put something in his mouth.  When a police officer grabbed Foxall's arm, both men fell to the ground after losing their balance.  In order to facilitate the removal of the contents of Foxall's mouth, the police officers inserted a plastic shoehorn.  Additionally, Foxall suffered three broken ribs, a bruised lower lip, a slight hemorrhaging of one eye, and several teeth missing which had allegedly been knocked out in the scuffle.   In finding that Foxall's due process rights had not been violated, this court held that the facts and circumstances demonstrated that the police had probable cause to suspect Foxall was attempting to secrete or destroy evidence, and they were justified in using reasonable force in order to prevent this from occurring.  
Foxall
, 157 Ind. App. at 31, 298 N.E.2d at 476-77.  Specifically, the court found that the shoehorn was inserted only after Foxall had attempted to bite the fingers of two of the officers.  
Foxall
, 157 Ind. App. at 32, 298 N.E.2d at 477.

There are two important factors which distinguish this case from that of 
Foxall
.  As discussed earlier, we find that Officer Harvey did not have probable cause with which to initiate a nonconsensual search.  Second, and more importantly, there was no evidence presented that the police officers choked Foxall.  A shoehorn had been placed in Foxall's mouth to help release the contents, and air flow was not restricted.  In the present case, Officer Harvey admitted to choking Conwell and spraying him with mace during a struggle which lasted between 10-15 minutes.

While the majority of jurisdictions have upheld the use of choke holds in some form or another,
(footnote: 3) we disagree with this practice for the aforementioned reasons.  Therefore, we reverse the decision of the trial court denying Conwell's motion to suppress and remand for proceedings not inconsistent with this opinion.

BAKER, J., and BROOK, J., concur.

FOOTNOTES
1:  Ind. Code § 35-48-4-6.

2:  
Although not raised as an issue by Conwell, we note that he was probably entitled to have Officer Harvey inform him of his 
Miranda
 rights.  
See
 
Berkemer v. McCarty
, 468 U.S. 420, 441, 104 S. Ct. 3138, 3151, 82 L. Ed. 2d 317 (1984) (finding that motorist detained as a result of a traffic stop who is later subjected to interrogation which effectively renders him "in custody," is entitled to protections enumerated in 
Miranda
).

3:  
See
 
State v. Thompson
, 505 N.W.2d 673 (Neb. 1993) (excessive force not used when suspect placed in a lateral vascular neck restraint which caused him to lose consciousness and citing 
Foxall
 as support); 
State v. Harris
, 505 N.W.2d 724 (Neb.1993) (affirming decision in 
State v. Thompson
 and citing 
Foxall
 as support for this proposition); 
State v. Lewis
, 566 P.2d 678 (Ariz. 1977) (choke hold to prevent defendant from swallowing balloon containing heroin did not deny defendant due process); 
People v. Johnson
, 223 N.E.2d 321 (Ill. App. Ct. 1966) (force not excessive when police throttled defendant to force him to expel heroin); 
Johnson v. State
, 397 S.W.2d 441 (Tex. Crim. App. 1965) (use of both hands to choke defendant in order to prevent him from swallowing marijuana did not render evidence inadmissible).  To the extent that these cases and others read 
Foxall
 as support for the use of choke holds, we hereby disapprove of such an interpretation.