Geoffrey C. LOCKETT, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 02S03–0004–CR–00232.

Supreme Court of Indiana.

May 21, 2001.

P. Stephen Miller, Fort Wayne, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Rosemary L. Borek, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

On Petition To Transfer

DICKSON, Justice.

Charged with carrying a handgun without a license as a class C felony,[1] the defendant-appellant brought this interlocutory appeal challenging the denial of his motion to suppress the handgun seized by police during a routine traffic stop. The Court of Appeals reversed, finding that a police officer may not as matter of routine practice question about the presence of weapons during a traffic violation stop. *Lockett v. State,* 720 N.E.2d 762 (Ind.Ct. App.1999). We granted transfer and now affirm the trial court, holding that the Fourth Amendment does not prohibit police from routinely inquiring about the presence of weapons.

1. Ind.Code § 35–47–2–1; Ind.Code § 35–47– 2–23.

On October 2, 1998, Fort Wayne Police Officer Jon Bonar, in uniform and driving a marked police squad car, observed a vehicle operated by the defendant, Geoffrey C. Lockett, turning without using a turn signal, making wide turns, driving at inconsistent speeds, and using the entire roadway. Believing that the driver might be impaired, Officer Bonar signaled to Lockett to pull over and walked up to the driver's side of Lockett's car. Two other persons were passengers, one in the right front seat and one in the rear seat. Lockett lowered his window and the officer noticed a strong odor of spilled alcohol. Pursuant to his usual routine, Officer Bonar asked Lockett for identification and asked whether Lockett had any weapons in the vehicle. The officer then requested that Lockett get out of the car for a sobriety check. Lockett did not respond to the weapons inquiry but simply handed the officer his identification and exited the car. As Lockett was stepping from the vehicle, the officer once again asked him whether he had any weapons on his person or in the vehicle. The defendant responded, "Yes, sir, underneath the driver's seat." Record at 59. Officer Bonar looked down and saw a handgun on the floor sticking out from under the driver's seat, and he took the weapon for his own safety. After unloading the handgun and placing it in the squad car, Officer Bonar returned and performed a pat-down search and a sobriety breath test of the defendant. Lockett was not arrested for driving while intoxicated but for driving with a suspended license, and for carrying a handgun without a license.

■ The defendant's motion to suppress claimed that the search of his vehicle violated the Fourth Amendment to the United States Constitution and Article 1, Section 11, of the Indiana Constitution. In neither the motion nor the supporting brief did the defendant argue that the standard under the Indiana Constitution is different from that under the United States Constitution. On appeal from the denial of his motion, the defendant's only reference to the Indiana Constitution is his assertion that the officer's weapons inquiry "is a violation of the 5th and 4th amendments of the United States Constitution and of sections 11 and 14 of Article 1 of the Indiana Constitution." Appellant Br. at 7. Because the defendant presents no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived. *Williams v. State*, 724 N.E.2d 1093, 1097 n. 5 (Ind.2000); *Brown v. State*, 703 N.E.2d 1010, 1015 n. 4 (Ind.1998); *Fair v. State*, 627 N.E.2d 427, 430 n. 1 (Ind.1993). The defendant contends that Officer Bonar violated his right under the Fourth Amendment to be free from unreasonable search and seizure by asking, during a traffic stop, whether the defendant had any weapons. The defendant challenges only the officer's inquiry regarding weapons, not the officer's actions in initiating the traffic stop.

■ A traffic stop is more akin to an investigative stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), than a custodial arrest. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984). The United States Supreme Court in *Terry* stated the issue of unreasonableness of an investigative stop properly considers whether the officer's actions were "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. In *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Supreme Court observed that "an investigative detention must be temporary and last no longer than

is necessary to effectuate the purpose of the stop" and that "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* at 500, 103 S.Ct. at 1325–26, 75 L.Ed.2d at 238.

■■■ In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the United States Supreme Court, confronting a claim that a weapon was improperly seized during a routine traffic stop, explained:

> The touchstone of our analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry v. Ohio,* 392 U.S. 1, 19[, 88 S.Ct. 1868, 20 L.Ed.2d 889] (1968). Reasonableness, of course, depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878[, 95 S.Ct. 2574, 45 L.Ed.2d 607] (1975).

*Id.* at 108–09, 98 S.Ct. at 332, 54 L.Ed.2d at 335–36. The safety of police officers is a "legitimate and weighty" justification for intrusion. *Id.,* at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 336. In *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), the Court declared, "Regrettably, traffic stops may be dangerous encounters," and noted that "in 1994 alone, there were 5,762 officer assaults and 22 officers killed during traffic pursuits and stops." *Id.* at 413, 117 S.Ct. at 885, 137 L.Ed.2d at 47.

■■■ The Supreme Court further acknowledged its concern for officer safety in *Knowles v. Iowa*:

> This is not to say that the concern for officer safety is absent in the case of a routine traffic stop. It plainly is not.

*See Mimms,* [434 U.S.] at 110; *Wilson,* [519 U.S.] at 413–414. But while the concern for officer safety [during a traffic stop] may justify the "minimal" additional intrusion of ordering a driver and passengers out of the car, it does not by itself justify the often considerably greater intrusion attending a full field-type search.... [O]fficers have other, independent bases to search for weapons and protect themselves from danger. For example, they may order out of a vehicle both the driver, *Mimms, supra,* at 111, and any passengers, *Wilson, supra,* at 414; perform a "patdown" of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous, *Terry v. Ohio,* 392 U.S. 1[, 88 S.Ct. 1868, 20 L.Ed.2d 889] (1968); conduct a *"Terry* patdown" of the passenger compartment of a vehicle upon reasonable suspicion that an occupant is dangerous and may gain immediate control of a weapon, *Michigan v. Long,* 463 U.S. 1032, 1049[, 103 S.Ct. 3469, 77 L.Ed.2d 1201] (1983); and even conduct a full search of the passenger compartment, including any containers therein, pursuant to a custodial arrest, *New York v. Belton,* 453 U.S. 454, 460[, 101 S.Ct. 2860, 69 L.Ed.2d 768] (1981).

525 U.S. 113, 117–18, 119 S.Ct. 484, 488, 142 L.Ed.2d 492, 498 (1998). In comparison to ordering a motorist stopped for a traffic violation to exit the car, which is permitted under the Fourth Amendment, asking whether the stopped motorist has any weapons is far less intrusive and presents insignificant delay.

The federal circuits are divided as to whether the Fourth Amendment permits an officer during a traffic stop to ask questions unrelated to the purpose of the stop. *Compare United States v. Shabazz,* 993

F.2d 431 (5th Cir.1993)(holding an officer may ask traffic stop detainee questions unrelated to the purpose of the stop so long as it does not unduly prolong the stop) *with United States v. Holt*, 229 F.3d 931 (10th Cir.2000)(holding an officer may not ask traffic stop detainee questions unrelated to the purpose of the stop without independent reasonable suspicion).

■ In the present case, the officer validly stopped the defendant's vehicle for a traffic infraction. When the officer approached the vehicle, he smelled alcohol, and this prompted the officer to investigate whether the driver was intoxicated. During this investigation, the officer asked the defendant whether he had any weapons. The question was justified by police safety concerns, and it did not materially extend the duration of the stop or the nature of the intrusion. We hold that Officer Bonar's questions were not an unreasonable search and seizure under the Fourth Amendment.

■ The defendant also contends that the question by the officer effectively rendered him in custody entitling him to the protections under *Miranda*.[2] Ordinarily, persons detained for traffic stops are not "in custody" for purposes of *Miranda*. *Berkemer*, 468 U.S. at 440, 104 S.Ct. at 3150, 82 L.Ed.2d at 334–35. This is not to say a traffic stop may not turn into a custodial situation based upon the conduct of the officer. *Id; see, e.g., Conwell v. State*, 714 N.E.2d 764 (Ind.Ct.App.1999)(finding detainee in custody when officer immediately ordered driver out of car, handcuffed him, and placed him in a choke hold).

■ In the present case, however, Officer Bonar's traffic stop of the defendant,

the officer's request that the defendant exit the car, and the officer's questioning the defendant regarding weapons did not constitute a custodial interrogation. This was a conventional traffic stop, and no *Miranda* warnings were required as the defendant was not in custody.

We affirm the trial court's denial of the defendant's motion to suppress. This cause is remanded to the trial court for further proceedings.

SHEPARD, C.J., and SULLIVAN and BOEHM, JJ., concur.

RUCKER, J., concurs in result with separate opinion.

RUCKER, Justice, concurring in result.

I agree the trial court correctly denied Lockett's motion to suppress because the record shows that once Lockett was ordered out of his car the officer observed a handgun protruding from under the driver's seat. The law is now clear that a police officer may order a driver as well as a passenger to exit a car during a traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). And the law is well settled that an officer may properly seize an item observed in plain view. *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Middleton v. State*, 714 N.E.2d 1099, 1101 (Ind.1999); *see also Trigg v. State*, 725 N.E.2d 446, 449 (Ind.Ct.App. 2000) (declaring that when the defendant exited the car at the officer's request during a traffic stop, the officer properly seized a crack pipe he saw on the driver's seat pursuant to the plain view doctrine).

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966).

Thus, I concur in the result reached by the majority in this case.

However, I disagree with the majority's conclusion that an officer may, as a matter of routine practice, ask a driver stopped for a traffic violation if he has a weapon in the vehicle or on his person. Rather, it is my view that the Fourth Amendment mandates that an officer have an objectively reasonable safety concern before making such an inquiry.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court established the rule that an officer can stop and briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion of criminal activity even if the officer lacks probable cause to make an arrest. *Id.* at 21–22, 88 S.Ct. 1868. To determine whether a *Terry* stop is unreasonable, the Court established a two-part test: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 19–20, 88 S.Ct. 1868; *see also Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (holding that the scope of a *Terry* stop must "be carefully tailored to its underlying justification."). The reasonableness of a *Terry* stop is judged against an objective standard because "[a]nything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction." *Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868. Traffic stops are analyzed under *Terry* and its progeny. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

The United States Supreme Court has expanded the scope of a traffic stop beyond that which rendered its initiation permissible—but only when "such steps [are] reasonably necessary to protect [an officer's] safety." *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). For example, an officer can perform a "patdown" of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous, *Terry*, 392 U.S. at 27, 88 S.Ct. 1868, and conduct a *"Terry* patdown" of the passenger compartment of a vehicle limited to those areas in which a weapon may be placed or hidden upon reasonable suspicion that an occupant is dangerous and may gain immediate control of a weapon. *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). In such cases "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S.Ct. 1868. However, permitting an officer to routinely inquire about the presence of weapons during a traffic stop goes beyond the scope of the circumstances which rendered its initiation permissible and furthermore does not require the officer to have an objectively reasonable suspicion that his safety is threatened.[3]

---

3. I acknowledge that the United States Supreme Court declared in *Mimms* that an officer can, as a matter of routine practice, order a driver out of his car during a traffic stop. However, the Court described this intrusion as "de minimis" and a "mere inconvenience" because it essentially amounted to "whether [the driver would] spend that period sitting in the drivers seat of his car or standing alongside it." *Mimms*, 434 U.S. at 111, 98 S.Ct. 330. Here, on the other hand, the intrusion is more serious because an affirmative response is likely to be incriminating. Further, the *Mimms* Court observed that it was dan-

Additionally, although the United States Supreme Court has yet to rule on this issue, it does appear the Court disfavors bright-line rules in the Fourth Amendment context. *See, e.g., Ohio .v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (declaring "we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry."). In my view the bright-line 'rule the majority has adopted in this case—allowing an officer, as a matter of routine practice, to ask a driver stopped for a traffic violation if he has any weapons—is both unwise and unnecessary. It seems to me that before inquiring about the presence of weapons, a police officer is required by the Fourth Amendment to have an objectively reasonable belief that his safety is threatened.[4] In this regard the observations of the Tenth Circuit Court of Appeals are instructive:

> [Allowing a police officer to immediately ask the driver of a vehicle about the presence of weapons] could conceivably result in a full-blown search of the passenger compartment of the detainees vehicle, no matter how minor the traffic infraction that initially prompted the stop, and even if the officer had no reasonable safety concerns when he posed the question. In our view, this goes too far.

*United States v. Holt,* 229 F.3d 931, 940 (10th Cir.2000). I agree.

gerous for an officer to stand by the drivers door in the path of oncoming traffic. *Id.* This concern is not implicated here.

4. I also observe, the notion that asking a driver if he has any weapons somehow advances officer safety is suspect. In reality a

driver could in fact be heavily armed and simply say no to an officers inquiry. Indeed, the law is settled that during a *Terry* stop a person may refuse to answer any questions posed by the officer. *Royer,* 460 U.S. at 497–98, 103 S.Ct. 1319.