Dominic **WASHINGTON**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0207–CR–527.

Court of Appeals of Indiana.

March 12, 2003.

---

Ann M. Sutton, A. Frank Gleaves, III, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Dominic Washington appeals his conviction for carrying a handgun without a license as a class C felony.[1] Washington raises one issue, which we restate as whether the trial court abused its discretion by admitting the handgun into evidence. We affirm.

The relevant facts follow. On October 20, 2001, Deputy Robert Hamblin of the Marion County Sheriff's Department saw Washington driving a vehicle on 42nd Street in Indianapolis. Washington failed to signal while changing lanes. Deputy Hamblin "ran" the vehicle's license plates

---

1. Ind.Code §§ 35–47–2–1, –23(c) (1998).

and the plates were not "on file so the vehicle was not properly registered." Transcript at 11. In addition, Deputy Hamblin determined that the vehicle was traveling approximately ten miles per hour over the posted speed limit and Washington was not wearing a seat belt.

Deputy Hamblin initiated a traffic stop and informed Washington of the reasons for the traffic stop. When Deputy Hamblin asked for Washington's driver's license and registration, Washington made an unusual "wide movement back towards his hip." *Id.* at 12. Washington tried "to lean to the side and reach way out and around and back [to] grab his wallet." *Id.* Deputy Hamblin also smelled what he believed to be marijuana in the vehicle. Deputy Hamblin returned to his vehicle to check Washington's license and registration. As he was checking the information, he noticed Washington adjusting his rearview mirror and watching Deputy Hamblin in his rearview mirror and side mirror. When Deputy Hamblin returned to Washington's vehicle, he asked Washington to step to the back of the vehicle so that he could explain the traffic warnings. As Washington exited the vehicle, Deputy Hamblin observed a bulge on Washington's back hip. Deputy Hamblin believed that the bulge was a weapon and instructed Washington to keep his hands up. Deputy Hamblin conducted a patdown search and discovered a handgun under Washington's shirt on his right hip area. Deputy Hamblin arrested Washington and then discovered marijuana during a subsequent search of his vehicle.

The State charged Washington with carrying a handgun without a license as a class C felony and possession of marijuana as a class D felony.[2] Washington filed a pre-trial motion to suppress the gun and the marijuana, which the trial court de-

nied. During a bench trial, Washington objected to the admission of the handgun and the marijuana and renewed his motion to suppress. The trial court admitted the gun into evidence, but excluded the marijuana. The trial court found Washington guilty of carrying a handgun without a license and not guilty of possession of marijuana. The trial court sentenced Washington to four years in the Indiana Department of Correction, with four years suspended and two years of probation.

■ The sole issue is whether the trial court abused its discretion by admitting the handgun into evidence. Initially, we note that both Washington and the State frame the issue in this case as whether the trial court abused its discretion by denying Washington's motion to suppress the handgun. However, Washington did not seek an interlocutory appeal after the denial of his motion to suppress. Rather, he proceeded with his trial and objected to the admission of the evidence at trial. In such cases, the trial court's denial of a motion to suppress is insufficient to preserve error for appeal. *Green v. State,* 753 N.E.2d 52, 59 (Ind.Ct.App. 2001), *trans. denied.* Rather, the defendant must make contemporaneous objection to the admission of evidence at trial. *Jackson v. State,* 735 N.E.2d 1146, 1152 (Ind.2000). If the defendant makes such an objection and the foundational evidence is not the same as at the suppression hearing stage, the trial court must determine whether evidence is admissible based upon the testimony and evidence presented at trial. *See, e.g., Joyner v. State,* 678 N.E.2d 386, 392–392 (Ind.1997) (discussing the proper procedure where a trial court conducts "a pre-trial hearing to consider objections which it rejects and is subsequently faced with the same objections

---

**2.** Ind.Code § 35–48–4–11 (1998).

raised at trial"), *reh'g denied.* Thus, the issue is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial.

■■■ A trial court has broad discretion in ruling on the admissibility of evidence. *Bradshaw v. State,* 759 N.E.2d 271, 273 (Ind.Ct.App.2001). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Huffines v. State,* 739 N.E.2d 1093, 1095 (Ind.Ct.App.2000), *trans. denied.*

Washington does not challenge the propriety of the initial traffic stop. Rather, Washington argues that Deputy Hamblin did not have reasonable suspicion to detain him after having decided to issue only warnings. Washington argues that the purpose of the traffic stop had been effectuated and that he should have been allowed to leave the scene at that time. Instead, Deputy Hamblin ordered him out of the vehicle and discovered the gun. Consequently, Washington argues that his Fourth Amendment rights were violated, and the trial court should not have admitted the gun at trial.

■■ Our supreme court has held that a "traffic stop is more akin to an investigative stop" under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), than a custodial arrest. *Lockett v. State,* 747 N.E.2d 539, 541 (Ind.2001), *reh'g denied.* "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop" and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.*

The State argues that Deputy Hamblin did not detain Washington longer than necessary to effectuate the traffic stop. We agree. After determining that Washington's license and registration were valid, Deputy Hamblin asked Washington to step to the rear of the car so that he could explain the warnings. Our supreme court has recognized that the Fourth Amendment permits an officer to request a motorist stopped for a traffic violation to exit a car. *Lockett,* 747 N.E.2d at 542. Thus, Deputy Hamblin was permitted to request that Washington exit the car so that he could explain the warnings. Deputy Hamblin had not yet completed his traffic stop at the time he noticed the bulge at Washington's right hip. Thus, Deputy Hamblin did not detain Washington longer than was necessary to effectuate the traffic stop. *See, e.g., Ammons v. State,* 770 N.E.2d 927, 932 (Ind.Ct.App.2002) (holding that an officer's request for a driver to exit the vehicle was reasonable), *trans. denied.*

Having determined that Deputy Hamblin did not detain Washington longer than necessary to effectuate the traffic stop, we must determine whether Deputy Hamblin's search of Washington was reasonable. The State argues that Deputy Hamblin did not conduct a search of Washington, but rather merely observed the handgun in plain view after he requested Washington to place his hands on his head. The State relies upon Deputy Hamblin's testimony from the hearing on the motion to suppress. During that hearing, Deputy Hamblin testified that after Washington exited the vehicle, Washington "kept wanting to put his right hand down towards his right side pocket and hip area." Transcript at 74. Deputy Hamblin further testified that he had Washington put his hands on his head and observed a gun sticking out from under Washington's shirt on his right hip area. However, as noted above, Washington did

not file an interlocutory appeal after the denial of his motion to suppress. Rather, he proceeded to trial and objected to the admission of the gun. Thus, the trial court had to determine whether the gun was admissible based upon the officer's testimony at trial. *See Joyner,* 678 N.E.2d at 392–392.

At trial, Deputy Hamblin testified that he found the weapon during a "cursory pat-down" after Washington exited the vehicle. Transcript at 15. Our supreme court noted that *Terry* permits a:

> reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Wilson v. State,* 745 N.E.2d 789, 792 (Ind. 2001) (citing *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883). Although we review a trial court's decision to admit evidence under an abuse of discretion standard, our review of the ultimate determination of reasonable suspicion is de novo. *Burkett v. State,* 736 N.E.2d 304, 306 (Ind.Ct.App.2000).

At trial, Deputy Hamblin testified that during the traffic stop, Washington made an unusual "wide movement back towards his hip" when the officer asked for his driver's license. Transcript at 12. Washington tried "to lean to the side and reach way out and around and back [to] grab his wallet." *Id.* After the officer returned to his car, he saw Washington adjusting his rearview mirror and watching him in the rearview mirror and side mirror. Deputy Hamblin asked Washington to step to the back of the vehicle so that he could explain the traffic warnings. As Washington exited the vehicle, the officer observed a bulge on Washington's back hip. Deputy Hamblin believed the bulge to be a weapon and instructed Washington to keep his hands up. A reasonably prudent person in these circumstances would be warranted in believing that his or her safety or that of others was in danger. Thus, the patdown search was reasonable, and Washington's Fourth Amendment rights were not violated. *See, e.g., D.H. v. State,* 688 N.E.2d 221, 223 (Ind.Ct.App.1997) (holding that a search was justified where the officer noticed a bulge in the defendant's pocket, the defendant's pants sagged from the weight of the object creating the bulge, and the defendant attempted to hide the bulge). Consequently, the trial court did not abuse its discretion by admitting the handgun into evidence over Washington's objection.

For the foregoing reasons, we affirm Washington's conviction for carrying a handgun without a license as a class C felony.

Affirmed.

KIRSCH, J., and SULLIVAN, J., concur.