John **GRIER,** Appellant–Defendant,

v.

**STATE of Indiana,** Appellee–Plaintiff.

No. 49A05–0512–CR–691.

Court of Appeals of Indiana.

Oct. 31, 2006.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

John Grier brings this interlocutory appeal of the trial court's denial of his motion to suppress evidence. We affirm.

### Issue

We consolidate and restate Grier's issues as whether the trial court abused its discretion in denying his motion to suppress.

### Facts and Procedural History

On August 26, 2005, Indianapolis Police Officer Eric Moncrief was driving in the 2900 block of Boulevard Avenue when he saw a black Dodge SUV with an expired license plate. He ran a computer check on the license plate and discovered that the plate did not match the vehicle. Officer Moncrief initiated a traffic stop, and he saw the two men inside the SUV making furtive movements before the vehicle came to a stop. Officer Moncrief called for backup because he "just wasn't comfortable" with the situation. Tr. at 7.

Officer Moncrief approached the vehicle on the driver's side, where Grier was seated. He ordered both men to place their hands where he could see them, and they complied with his request. Then Grier reached for the gearshift, and Officer Moncrief told him to stop. Grier refused to answer when Officer Moncrief asked for his name, and he refused to produce his license and registration. Grier seemed nervous. He was sweating and crying.

Officer Moncrief ordered Grier to get out of the SUV. Grier complied and began choking and gagging. Officer Moncrief asked Grier if he was all right, and Grier nodded his head. Officer Moncrief asked Grier to open his mouth, and when Grier did, Moncrief saw a large clear baggie covered with blood and saliva. Officer Moncrief saw that the baggie contained a substance that appeared to be cocaine. He ordered Grier to spit out the baggie, and Grier refused. Then Officer Moncrief grabbed Grier around the neck with one hand and applied pressure to his throat to prevent Grier from swallowing the baggie.

After approximately fifteen to twenty seconds, Grier spit the baggie out onto the sidewalk, and the officers recovered it.

The State charged Grier with possession of cocaine as a class C felony and driving while suspended as a class A misdemeanor. Grier filed a motion to suppress the baggie and its contents on the basis that Officer Moncrief's search of his person violated his constitutional rights. After a hearing, the trial court denied Grier's motion. This interlocutory appeal ensued.

### Discussion and Decision

■■■■ Grier argues that the trial court erred in denying his motion to suppress because the evidence was seized in violation of his rights under the Fourth Amendment to the United States Constitution and Article 1, Sections 11 and 15 of the Indiana Constitution. Our standard of review is well settled. We afford the trial court broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of abuse of discretion. *Mast v. State,* 809 N.E.2d 415, 418 (Ind.Ct.App.2004), *trans. denied* (2005). An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances before the court. *Rosa v. State,* 832 N.E.2d 1119, 1121 (Ind.Ct.App.2005). Our review of the denial of a motion to suppress is similar to that of other sufficiency issues. *Mast,* 809 N.E.2d at 418. We will consider the evidence most favorable to the trial court's decision, and we will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* If there is sufficient evidence of probative value to support the denial of the motion to suppress, we will uphold the trial court's decision. *Id.* at 419.

### A. Fourth Amendment

■■■■ First, Grier claims that Officer Moncrief violated his Fourth Amendment right against unreasonable search and seizure because Officer Moncrief used excessive force to recover the baggie.[1] The U.S. Supreme Court created a balancing test for determining the reasonableness of a body search in *Winston v. Lee,* 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985). We are to consider: (1) the extent to which the search method used may threaten the safety and health of the individual, (2) the extent of intrusion upon the person's dignitary interests in personal privacy and bodily integrity, and (3) the community's interest in fairly and accurately determining guilt or innocence. *Id.* at 762–63, 105 S.Ct. 1611; *see also Conwell v. State,* 714 N.E.2d 764, 767–68 (Ind.Ct.App.1999).

In *Conwell,* another panel of this Court found that an officer's retrieval of a baggie from the defendant's mouth was improper because it involved an unreasonable amount of force. Conwell was pulled over for speeding and failing to use his turn signal. When the officer asked for his identification, Conwell turned over his wallet. Upon discovering a probation card in the wallet, the officer asked why he was on probation, and Conwell responded that he

---

1. Although Grier frames his claim regarding excessive force as a violation of his due process rights under the Fourteenth Amendment, he fails to provide a distinct due process analysis and thus waives this argument on appeal. *See* Ind. Appellate Rule 46(A)(8)(a) (argument must contain appellant's contentions on the issues presented, supported by cogent reasoning). Therefore, we will review the issue of excessive force as part of Grier's Fourth Amendment claim of unreasonable search and seizure.

There are other factors to be considered in determining the reasonableness of a warrantless search, including whether the officer had probable cause and whether there were exigent circumstances. *State v. Straub,* 749 N.E.2d 593, 602 (Ind.Ct.App.2001). Grier does not challenge these issues, however, so we need not address them.

had been convicted of narcotics possession. Based on the officer's experience that individuals often hide their narcotics in their mouths, he asked Conwell to open his mouth and lift his tongue. Conwell instead began making a "chewing motion." *Conwell,* 714 N.E.2d at 766. The officer then placed a choke hold on Conwell to prevent him from swallowing. The officer maced Conwell with CS spray. Another officer arrived and maced Conwell a second time. After a ten- to fifteen-minute struggle, the officers were able to wrestle Conwell to the ground and retrieve the baggie. Another panel of this Court concluded that the invasion of Conwell's bodily integrity and the health and safety risks were great and that "[s]afer alternatives existed to effect recovery of the evidence," including holding the suspect in custody until the contents passed through his digestive system. *Id.* at 768.

The circumstances were much different in the instant case. Here, Officer Moncrief applied pressure to Grier's neck for approximately fifteen seconds, a much shorter amount of time than in *Conwell.* Furthermore, the officers did not mace Grier. Officer Moncrief testified that he applied pressure to Grier's neck to prevent him from swallowing the baggie, but there was no evidence that Grier's airway was blocked or that he was being choked by Officer Moncrief. In fact, Grier was already choking and gagging on the baggie when Officer Moncrief began to apply pressure. Therefore, we conclude that there was an insignificant threat—and perhaps even a benefit, when one considers the potential risk of ingesting cocaine [2] —to Grier's health and safety and that the intrusion upon his dignitary interests and bodily integrity was minimal. Also, Officer Moncrief acted in the community's interest to preserve evidence that is necessary to determine Grier's guilt or innocence. In sum, there is sufficient evidence to support the trial court's finding that Officer Moncrief's search of Grier's person was reasonable. The trial court did not abuse its discretion in concluding that no Fourth Amendment violation oc-

---

2. Grier points out that another panel of this Court was not persuaded by the State's arguments regarding the possible danger of swallowing drugs. In *Conwell,* Judge Rucker stated (with Judges Baker and Brook concurring):

> Although [the police officer] claimed that it would be dangerous for Conwell to swallow the cocaine, other courts which have considered this issue have found that this practice does not usually result in adverse affects to one's health. [*State v. Hodson,* 907 P.2d 1155, 1158 (Utah 1995); *People v. Jones,* 209 Cal.App.3d 725, 257 Cal.Rptr. 500, 502 (1989); *State v. Tapp,* 353 So.2d 265, 269 (La.1977) ]. We find these grounds unpersuasive as justification for the use of such violent and dangerous means to preserve evidence and therefore find that under these facts, the violation of Conwell's bodily integrity and the health and safety dangers involved were greater than the need to preserve evidence.

*Conwell,* 714 N.E.2d at 768. We first note that *Conwell* was decided on other grounds. The Court's statements above are merely dicta and, therefore, we need not consider them as we review the instant case. Further, as discussed throughout this opinion, the struggle between Grier and Officer Moncrief was not nearly as "violent and dangerous" as that in *Conwell,* making the potential danger of ingesting illegal drugs more persuasive as justification for the lesser amount of force used by Officer Moncrief. *See id.* Finally, based on our own cursory research, we cannot necessarily conclude that swallowing cocaine does not put a person at significant risk for injury or death. *See, e.g., http://www.usdoj.gov/ndic/ pubs07/997/cocaine.htm* (citing newspaper reports of two Connecticut deaths in the year 2000 of men who swallowed crack cocaine while in police custody).

curred.[3]

### B. Article 1, Section 11

 Grier also contends that the search violated his rights under the Indiana Constitution. Article 1, Section 11 protects Hoosiers against unreasonable searches and seizures. The State carries the burden of proving that the police conduct was reasonable under the totality of the circumstances. *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind.2002). To make a determination of reasonableness, we will consider: (1) the degree of concern, suspicion, or knowledge that the person has violated the law; (2) the degree of intrusiveness that the search method imposes on the person; and (3) the extent of law enforcement needs. *Trimble v. State*, 842 N.E.2d 798, 803 (Ind.2006), *reh'g granted on other grounds*, 848 N.E.2d 278 (Ind. 2006). In the instant case, Officer Moncrief had a justifiably high degree of concern and suspicion that Grier had engaged in illegal activity. Officer Moncrief testified that Grier and his passenger were making furtive movements as he pulled them over, and that Grier was shaking and crying, would not make eye contact with him, and refused to reveal his name. When Grier got out of the car, Officer Moncrief noticed that he was choking and gagging, and he saw a baggie with what appeared to be cocaine inside Grier's mouth. All these facts supported Officer Moncrief's suspicion that Grier had violated the law.

As for the second consideration, we find that Officer Moncrief's application of pressure for approximately fifteen seconds was not a high degree of intrusiveness. There is no evidence that this search method caused Grier to stop breathing, choke, or lose consciousness. In fact, Officer Moncrief may have prevented Grier from choking to death on the baggie or from suffering injury or even death by ingesting the cocaine.

Finally, the law enforcement needs were significant here. It was important for Officer Moncrief to preserve the evidence for an accurate determination of Grier's guilt or innocence. Also, Officer Moncrief was concerned that swallowing the suspected contraband might injure or kill Grier, and he acted, at least in part, for the purpose of protecting Grier from harm.

In sum, we conclude that the State has presented sufficient evidence that Officer Moncrief's search was reasonable under the totality of the circumstances. Therefore, the trial court did not abuse its discretion in finding no violation of Article 1, Section 11 of the Indiana Constitution.

### C. Article 1, Section 15

 Grier also claims that Officer Moncrief's grabbing of his neck violated his right to be free from "unnecessary rigor" under Article 1, Section 15 of the Indiana Constitution. This section states: "No person arrested, or confined in jail, shall be treated with unnecessary rigor." As the State points out, Grier was not under arrest or in prison at the time that Officer Moncrief prevented him from swallowing the baggie, and therefore, Article 1,

---

**3.** Grier argues that this Court's holding in *Conwell* makes it unreasonable per se under the Fourth Amendment for police to apply pressure to an individual's throat to prevent him or her from swallowing suspected contraband. The State counters that "[t]he Fourth Amendment's reasonableness analysis ... has long been reviewed under the totality of the circumstances test on a case-by-case basis."

Appellee's Br. at 13. We certainly acknowledge the potential difficulty in determining on a case-by-case basis what makes a so-called "chokehold" reasonable, e.g. the amount of pressure, the length of time, whether the hold actually restricted the airway or caused the individual to choke, and so on. We look to our supreme court to provide additional guidance on this issue in the future.

Section 15 likely does not apply here. Grier cites one case in which our supreme court stated that Article 1, Section 15 applies to "any place where the arresting officer may cause a defendant to be confined." *Suter v. State*, 227 Ind. 648, 88 N.E.2d 386, 391 (1949). That case involved a man who was held by police for forty hours before confessing to a crime. During that time, police confined him to a small cell or room, withheld food, deprived him of sleep, and threatened to injure him. Clearly, *Suter* involved torture and abuse on a level far beyond the force used by Officer Moncrief in the instant case, and therefore, it is not applicable here. As our supreme court has stated:

> Cases recognizing violations of Article 1, Section 15 involve situations where a prisoner was tortured, had a tooth knocked out, was repeatedly beaten, kicked, and struck with a blackjack and beaten with a rubber hose while he was stretched across a table, *Kokenes v. State*, 213 Ind. 476, 13 N.E.2d 524 (1938), where a prisoner was beaten with police officer's fists in both eyes, cut on the top of his head, and beaten with a rubber hose on the head and ears, *Bonahoon v. State*, 203 Ind. 51, 178 N.E. 570 (1931), and where a prisoner was severely injured after being shot by police during a protest, *Roberts v. State*, 159 Ind.App. 456, 307 N.E.2d 501 (1974).

*Ratliff v. Cohn*, 693 N.E.2d 530, 541 (Ind. 1998). Clearly, it was not an abuse of discretion for the trial court to conclude that Officer Moncrief's actions did not rise to the level of abuse or torture contemplated by the prohibition of "unnecessary rigor" in our constitution.

Affirmed.

BAKER, J., and VAIDIK, J., concur.