**Reynold DELATORRE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0807–CR–636.**

Court of Appeals of Indiana.

March 25, 2009.

Transfer Denied May 14, 2009.

Ellen M. O'Connor, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Reynold Delatorre appeals his conviction of carrying a handgun without a license. Finding no violation of his Fourth or Fifth Amendment rights, we affirm.

### FACTS AND PROCEDURAL HISTORY

On April 18, 2008, Officer Michael Maxwell stopped the vehicle Delatorre was

driving because the taillights were not working. Officer Maxwell asked Delatorre for a driver's license or Indiana ID card. Delatorre said he did not have one. Officer Maxwell also asked Delatorre's passenger if he had identification, and the passenger shook his head "no."

Delatorre began speaking to the passenger in Spanish. Officer Maxwell asked him to stop speaking Spanish because he could not understand Spanish and that made it difficult for him to assess the danger of the situation. Delatorre continued to speak in Spanish to the passenger.

Officer Maxwell then asked Delatorre if he had any weapons in the car. Delatorre told him there was a gun in the compartment of the driver's side door. Assisted by Officer Christopher McKay, Officer Maxwell placed Delatorre and his passenger in handcuffs and had them sit on a curb. Officer Maxwell then retrieved a handgun from the door.

Officer Maxwell ran a search to determine whether Delatorre had a driver's license, Indiana ID, or a gun permit. He did not. Officer Maxwell then read Delatorre his *Miranda* rights and placed him under arrest. Delatorre told Officer Maxwell the handgun belonged to his girlfriend.

Delatorre was charged with carrying a handgun without a license, a Class A misdemeanor,[1] and operating a vehicle having never received a license, a Class C misdemeanor.[2] The case was tried to the bench on June 19, 2008.

Over Delatorre's objection, the State admitted the gun and Officer Maxwell's testimony that Delatorre told him there was a gun in the compartment of the driver's side door. Delatorre's girlfriend, Crysta Gude, testified she owned the gun. Gude said she placed it in Delatorre's vehicle because she planned to take it to Don's Guns to get it fixed; however, they did not go to Don's Guns. She drove Delatorre's vehicle to work and left the gun in the vehicle. Delatorre was riding along with her and knew the gun was in the vehicle. Delatorre claimed he did not notice whether Gude had removed the gun. When Officer Maxwell asked him if he had any weapons in the vehicle, he looked to see if Gude had left the gun in the vehicle. Seeing that it was still there, he told Officer Maxwell about it.

The trial court granted Delatorre judgment on the evidence on the charge of operating a vehicle having never received a license "because there has been no proof other than this gentleman's statement that he did not have an operator's license." (Tr. at 34.) The trial court found Delatorre guilty of carrying a handgun without a license.

## DISCUSSION AND DECISION

Delatorre argues the trial court abused its discretion by admitting the gun and his statement to Officer Maxwell.

> Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. However, we must also consider the uncontested evidence favorable to the defendant.

*Widduck v. State*, 861 N.E.2d 1267, 1269 (Ind.Ct.App.2007) (citations omitted).

■ Delatorre argues the evidence should not have been admitted because

---

1. Ind.Code § 35–47–2–1.

2. Ind.Code § 9–24–18–1.

Officer Maxwell did not give him a *Miranda* warning before asking about weapons, and his statement led to the discovery of the gun. We disagree.

Delatorre's case is similar to *Lockett v. State*, 747 N.E.2d 539 (Ind.2001), *reh'g denied*. An officer observed Lockett driving erratically and pulled him over. When the officer approached Lockett's car, he smelled alcohol. "Pursuant to his usual routine, Officer Bonar asked Lockett for identification and asked whether Lockett had any weapons in the vehicle." *Id.* at 541. Lockett admitted there was a handgun beneath the driver's seat. The officer took the gun, unloaded it, and placed it in his own car. Then he performed a field sobriety test on Lockett. Lockett was not arrested for driving while intoxicated, but for driving with a suspended license and carrying a handgun without a license.

The Indiana Supreme Court held there was no violation of Lockett's *Miranda* rights because a person detained for a traffic stop is not ordinarily "in custody" in the meaning of *Miranda*. *Id.* at 543 (citing *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). "This was a conventional traffic stop, and no Miranda warnings were required as the defendant was not in custody." *Id.* Delatorre does not explain how his case is different from the "conventional traffic stop" in *Lockett*. Moreover, we note that even if Delatorre's statement had been obtained in violation of *Miranda*, the gun would not have to be suppressed. *See U.S. v. Patane*, 542 U.S. 630, 636, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) ("The Self-incrimination Clause ... is not implicated by the admission into evidence of the physical fruit of a voluntary statement.

Accordingly, there is no justification for extending the *Miranda* rule to this context.").

■■■■ Delatorre also argues his Fourth Amendment rights were violated because Officer Maxwell acted unreasonably by asking him about weapons. In light of *Lockett*, we must disagree. "A traffic stop is more akin to an investigative stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), than a custodial arrest." *Lockett*, 747 N.E.2d at 541.

> The touchstone of our analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry v. Ohio*, 392 U.S. 1, 19[, 88 S.Ct. 1868, 20 L.Ed.2d 889] (1968). Reasonableness, of course, depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni–Ponce*, 422 U.S. 873, 878[, 95 S.Ct. 2574, 45 L.Ed.2d 607] (1975).

*Id.* at 542 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). "The safety of police officers is a 'legitimate and weighty' justification for intrusion." *Id.* at 542 (quoting *Mimms*, 434 U.S. at 110, 98 S.Ct. 330). The Fourth Amendment "does not prohibit police from routinely inquiring about the presence of weapons," *id.* at 540, and the United States Supreme Court has authorized more intrusive means for protecting an officer's safety during a traffic stop. *Id.* at 542 (citing *Knowles v. Iowa*, 525 U.S. 113, 117–18, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998)).[3] "The question was

---

**3.** The Indiana Supreme Court noted the federal courts are

> divided as to whether the Fourth Amendment permits an officer during a traffic stop

to ask questions unrelated to the purpose of the stop. *Compare United States v. Shabazz*, 993 F.2d 431 (5th Cir.1993) (holding an officer may ask traffic stop detainee ques-

justified by police safety concerns, and it did not materially extend the duration of the stop or the nature of the intrusion." *Id.* at 543.[4] *See also United States v. Childs,* 277 F.3d 947, 954 (7th Cir.2002) ("Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention.").

Delatorre attempts to distinguish *Lockett* by arguing Officer Maxwell did not have a legitimate concern for his safety; instead, Officer Maxwell asked about weapons because he was irritated that Delatorre was speaking Spanish and was potentially engaging in racial profiling. His argument, however, ignores the evidence favorable to the judgment. Officer Maxwell testified it was his routine practice to inquire about weapons:

> [W]henever I do a traffic stop my gauge is already up here and then I *always* ask if there are weapons in the car. I mean that's just a general thing that I ask ... regardless who is pulled over black, white or whatever.... [I]t's customary that I *always* ask that no matter what traffic stop but the fact that they started speaking Spanish after I asked them not

to my concern for my safety was bumped up just a little bit more but I *always* ask if there are any guns or weapons in the car.

(Tr. at 21–22) (emphases added). While Officer Maxwell testified Delatorre's use of Spanish heightened his concern for his safety, he clearly indicated he would have asked about weapons in any event.

Delatorre's Fourth and Fifth Amendment rights were not violated. Therefore, we affirm.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.

---

tions unrelated to the purpose of the stop so long as it does not unduly prolong the stop) *with United States v. Holt,* 229 F.3d 931 (10th Cir.2000) (holding an officer may not ask traffic stop detainee questions unrelated to the purpose of the stop without independent reasonable suspicion).
*Lockett,* 747 N.E.2d at 542–43.

The Tenth Circuit subsequently reheard *Holt en banc.* The full court held questioning without particularized suspicion could violate the Fourth Amendment even if it did not extend the length of a traffic stop, but found officer safety concerns justified routine inquiry about firearms. *United States v. Holt,* 264 F.3d 1215, 1217–18 (10th Cir.2001). The Sixth and Seventh Circuits have followed *Shabazz. United States v. Burton,* 334 F.3d 514, 518–19 (6th Cir.2003), *cert. denied* 540 U.S. 1135, 124 S.Ct. 1113, 157 L.Ed.2d 941 (2004); *United States v. Childs,* 277 F.3d 947,

949, 953 (7th Cir.2002) (*en banc* ), *cert. denied* 537 U.S. 829, 123 S.Ct. 126, 154 L.Ed.2d 43 (2002). *See also United States v. Purcell,* 236 F.3d 1274, 1279–80 (11th Cir.2001) (recognizing the different approaches of the Fifth and Tenth Circuits and holding officer's question about weapons was permissible under either). Therefore, the Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits all permit an officer to inquire about weapons during a traffic stop so long as the stop is not unreasonably extended.

4. Delatorre asserts Officer Maxwell's question "unreasonably extended" the stop "beyond the time necessary to effectuate the traffic investigation." (Appellant's Br. at 11.) He cites no evidence that would distinguish his case from *Lockett,* but simply engages in speculation that he might have been released with a summons had the gun not been discovered.