ROBERT RUEBEN FOXALL *v.* STATE OF INDIANA.

[No. 1-1072A80. Filed July 17, 1973.]

*Gerald E. Surface, Jr.,* Public Defender, of Richmond, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant (Foxall) was tried by court and convicted of Possession of Opium. Prior to trial Foxall's Motion to Suppress Evidence was overruled.

Foxall argues on appeal that (1) there was insufficient probable cause to support the issuance of a warrant to search his apartment for certain stolen property and heroin, (2) the search of the appellant during the execution of the warrant involved such unreasonable force as to deny him due process of law, and (3) therefore, the conviction is based upon evidence obtained from an illegal search and is contrary to law.

The search warrant in question was issued on June 11, 1971, based on an affidavit filed the same day. The affidavit contained information supplied to Officer Ronald Chestnut by one Osborne. In two statements made on June 6 and June 8, 1971, Osborne had informed Chestnut that on May 7, 1971, he and others had stolen certain property and exchanged

it with Foxall for $50.00 and 12 packets of white powder. Osborne also stated that when reduced to liquid and injected into his veins, the powder produced a reaction similar to that of heroin.

Chestnut declared Osborne to be a credible person who had, on prior occasions, supplied information that proved to be valid.

Pursuant to the warrant, Foxall's apartment was searched on the evening of June 11, 1971. The officers found a television set fitting the description of one listed in the warrant. Foxall was then placed under arrest for obtaining control over stolen property.

As one officer prepared to search Foxall's person, another officer observed Foxall attempting to place something in his mouth. As the first officer grabbed Foxall's arm, both men lost their balance and fell over a chair. A scuffle ensued between Foxall and the officers and several foil packets of what later proved to be heroin were finally forced from Foxall's mouth.

A plastic "shoe horn" was inserted into Foxall's mouth to facilitate this extraction. A subsequent physical examination of Foxall revealed three broken ribs, a bruised lower lip, a slight hemorrhaging of one eye and several teeth missing from his denture plate. Foxall testified that the teeth were dislodged upon insertion of the "shoe horn", but the officers testified that no teeth were found at the scene.

Foxall argues that the search warrant issued June 11, 1971, does not meet the specified standards of probable cause.

Foxall first contends that the affidavit for search warrant is void on its face. The language in question reads, "James Edward Osborne on the 7th of May, 1971, stated that he, . . ." This is an apparent typographical error or variance. Subsequent uncontroverted testimony revealed that Osborne gave his statements to the police on June 6 and June 8,

1971, and that May 7, 1971 was the date upon which the facts recited in his statement occurred.

An examination of the record discloses that Foxall raises this issue for the first time in this appeal. It was not raised in his Motion to Suppress Evidence. Neither was it argued in his Motion to Correct Errors as required by TR. 59(G).

This court has held that it will not consider arguments which have not been preserved by the Motion to Correct Errors. *Clardy* v. *State* (1973), 156 Ind. App. 121, 294 N.E.2d 807; *Harris* v. *State* (1972), 154 Ind. App. 129, 289 N.E.2d 344.

Foxall next contends that the time which intervened between Osborne's statement (June 8, 1971) and the issuance of the search warrant based upon facts given in the statement (June 11, 1971) was unreasonable. Here again, Foxall raises an issue for the first time on appeal. Not being preserved in the Motion to Correct Errors, this argument too, must fail

Foxall next maintains that the affidavit leading to the issuance of the search warrant did not provide a sufficient basis for a finding of probable cause. Specifically, he argues that the affidavit failed to set forth any of the underlying circumstances on which the informant based his conclusions.

Foxall relies on *Aguilar* v. *Texas* (1964), 378 U.S. 108, in which a conviction for illegal possession of heroin was reversed. The affidavit for search warrant was based upon hearsay information provided by an informer. The relevant portion of the affidavit is set forth at page 109, as follows:

> "Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law."

The court held that this allegation, unsupported by any recitation of underlying circumstances from which the in-

formant drew his conclusion, did not provide a sufficient basis for a finding of probable cause.

The affidavit in the case at bar is not defective in this respect. It recites more than a mere conclusion of an informer that Foxall was in possession of heroin. Rather, it sets forth the details of a transaction between the informant and Foxall in which stolen property was exchanged for money and white powder which, when reduced to liquid and injected, produced the same reaction as heroin.

Foxall argues that there are not sufficient underlying circumstances shown upon which Osborne based his conclusion that the white powder was heroin. He questions the informant's ability to identify the substance as heroin. He also questions whether the affidavit specifically reveals that Osborne received the money and white powder in exchange for the stolen goods. We do not find these arguments convincing. The U.S. Supreme Court, in applying the *Aguilar* decision in the later case of *United States* v. *Ventresca* (1965), 380 U.S. 102, commented as follows:

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.

\* \* \*

"Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner."

Moreover, in Indiana it has been held that heroin may be identified by a user's testimony describing the reaction produced by reducing and injecting a white powder into his person. *Pettit* v. *State* (1972), 258 Ind. 409, 281 N.E.2d 807.

We therefore conclude that the affidavit set forth sufficient underlying circumstances to support a finding of probable cause under *Aguilar, supra.*

Foxall next contends that the affidavit fails to meet the specified standards for credible hearsay as prescribed in IC 1971, 35-1-6-2; Ind. Ann. Stat. § 9-602 (Burns 1972 Supp.):

"No warrant for search or arrest shall be issued until there is filed with the justice of the peace, judge of any city court or magistrate's court or the judge of any court of record, an affidavit, particularly describing the house or place to be searched and the things to be searched for, or particularly describing the person to be arrested, and alleging substantially the offense in relation thereto, and that the affiant believes and has good cause to believe that such things as are to be searched for are there concealed, or that the person to be arrested committed said offense, and setting forth the facts then in knowledge of the affiant or information based on credible hearsay, constituting the probable cause. When based on credible hearsay, the affidavit shall contain reliable information supplied to the affiant by a credible person, named or unnamed, and it shall contain the following:

"(a) Affirmative allegations that the credible person spoke with personal knowledge of the matters contained therein.
"(b) The facts within the personal knowledge of the credible person.
"(c) The facts within the affiant's knowledge as to the credibility of the credible person."

Foxall argues that the affidavit fails to present independent facts upon which the affiant determined the credibility of the informer. The affidavit contains the following statement as to the informer's credibility:

"That this affiant knows that the said James Edward Osborne is a credible person as *he has, on prior occasions,*

*given this affiant information that proved to be valid."* (Our emphasis.)

The question presented is whether the above statement is sufficient to satisfy the statutory requirement demanding facts "within the affiant's knowledge as to the credibility of the credible person."

The *Aguilar* case held that where the affidavit is based on hearsay information provided by an informant, it must contain some of the underlying circumstances from which the officer concluded that the informant was "credible" or his information "reliable". To exemplify the holding, the court footnotes an affidavit which was sustained in *Jones* v. *United States* (1960), 362 U.S. 257. In that affidavit, the credibility of the informant was established by stating that he had, on previous occasion, supplied the affiant with correct information.

We therefore hold that the statement in the affidavit declaring that the informant Osborne had previously supplied valid information is sufficient to satisfy the Indiana statutory requirement of facts as to the credibility of an informer.

Foxall interprets *Spinelli* v. *United States* (1969), 393 U.S. 410, as requiring corroboration of an informer's statement from other sources. However, a close reading of the case indicates that this is necessary only where the affidavit falls short of meeting the *Aguilar* standards.

"The informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered."

The affidavit in *Spinelli* was found to be defective under *Aguilar* standards. Although the affiant swore that the informer was "reliable", he offered no reasons to support this

conclusion. Likewise, it was found that the affidavit failed to recite sufficient underlying circumstances in support of the informer's conclusion that Spinelli was engaged in the illegal activity alleged.

Since we have concluded that the affidavit in the ■ case at bar meets the *Aguilar* standards, *Spinelli* is not applicable.

Foxall further contends that the informer Osborne lacked full mental abilities in that he was under the influence of heroin at the time he made his statement, and there- ■ fore, could not be judged a credible person. An examination of the record discloses testimony in the hearing on the Motion to Suppress Evidence tending to refute this contention. It is well established that this court does not assume the responsibility of passing upon the credibility of witnesses or of weighing conflicting evidence. *Hightower* v. *State* (1973), 260 Ind. 481, 296 N.E.2d 654; *Baynard* v. *State* (1972), 259 Ind. 336, 286 N.E.2d 844; *State* v. *Lovett* (1970), 254 Ind. 27, 257 N.E.2d 298; *State* v. *Bowling* (1970), 253 Ind. 634, 256 N.E.2d 392.

Foxall next contends that the search recovering the heroin from his person was an illegal search denying him due process of law in that the police officers administered unreasonable force. Foxall relies heavily on *Rochin* v. *California* (1952), 342 U.S. 165. In that case, three sheriff's deputies, upon gaining information that Rochin was selling narcotics, entered Rochin's dwelling without a warrant, forced a bedroom door, and confronted Rochin sitting in bed. Rochin took two capsules from a "night stand" and placed them in his mouth. A struggle ensued in which the three deputies unsuccessfully attempted to extract the capsules from his mouth. Rochin was handcuffed and taken to a hospital where, at the direction of one of the officers, a doctor pumped his stomach against his will. The two capsules recovered were found to contain morphine.

California District Court of Appeals affirmed the trial court's conviction and the Supreme Court denied without opinion a petition for rehearing.

The U.S. Supreme Court granted certiorari and reversed finding that the conviction had been obtained by methods offending the Due Process Clause of the Fourteenth Amendment. The rationale behind the court's decision is expressed in the following excerpts from Justice Frankfurter's opinion:

> "This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation.
>
> *    *    *
>
> "It would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his stomach."

Foxall argues that the *Rochin* rationale is applicable to the case at bar. However, we note at least two important distinguishing factors. In *Rochin,* the search was illegal from its inception. The officers forced their way into Rochin's dwelling without a warrant. Foxall was searched following an arrest which occurred during the orderly execution of a valid search warrant. The second and most significant distinction is that in *Rochin* the narcotics were extracted from the stomach of the defendant.

A case more directly on point is *People* v. *Tahtinen* (1962), 210 Cal. App. 2d 755, 26 Cal. Rptr. 864, *cert. denied* 375 U.S. 842. Tahtinen was convicted for possession of heroin. He was convicted on the basis of heroin, which had been forced from his mouth by police officers. On appeal, Tahtinen asserted that the evidence was obtained through an illegal

search in violation of due process. Tahtinen relied heavily upon *Rochin*, but the court distinguished the case and affirmed the conviction. The facts were as follows:

Upon gaining information that Tahtinen was using narcotics, police officers went to his apartment. They rang the apartment door bell, then concealed themselves in the hallway. Tahtinen answered the door and stepped into the hallway. Upon seeing the officers Tahtinen pulled a package from his upper pocket and placed it in his mouth. A struggle ensued in which the defendant's head was pressed forward and downward to prevent him from swallowing. One officer was bitten while attempting to place his fingers in Tahtinen's mouth. After a few minutes Tahtinen spit the package out, and it was later found to contain heroin.

In affirming the conviction the court held that police officers may use reasonable force to prevent a defendant from destroying evidence of his crime.

The reasoning of the court is embodied in the following excerpts from the opinion at page 867:

"In Vasquez v. Superior Court, 199 Cal. App. 2d 61, 66, 18 Cal Rptr. 140, 144 it is aptly stated:

'It remains true, however, that each case of this kind is a fact case. The correct decision of each depends not so much upon a higher critical examination of the accumulated decisional gloss as upon a common-sense determination of whether, within the meaning the Constitution uses, the particular search and seizure has been unreasonable, that is, whether what was done and found bears a reasonable relation to the authority then possessed and exercised or transcends it to become oppression. (In re Ginsburg, 147 F. 2d 749, 750 (2 Cir.).) Each case is to be decided on its own facts and circumstances. (Harris v. United States, 331 U.S. 145, 67 S. Ct. 1098, 91 L. Ed. 1399, at 1405.)' "

"Here the officers saw the defendant make furtive motions, then he made a quick effort to swallow the evidence, the officers reached for his arm to stop him. *The defendant had*

*no constitutional right to swallow or destroy the evidence of his crime.* (Cases cited.)

\* \* \*

"It is apparent in this case that had the defendant delivered over the heroin with which he was caught in the first instance there would have been no struggle. He saw fit, however, to attempt to destroy the evidence, to bite, strike, kick and wrestle with the officers in an attempt to avoid being taken into custody with the heroin as evidence. The defendant resisted to the utmost and it would appear that he was of considerable strength and force, for it took two policemen to hold him, thereby avoiding a fight, and to subdue him to the end that they could effectuate the arrest.

"The police should not be required to be subjected to beatings by arrestees any more than arrestees should be subjected to beatings by the police. There is no credible evidence that the police exercised any disproportionate force upon the defendant. As Justice Cardozo said in Snyder v. Massachusetts, 291 U.S. 97, 122, 54 S. Ct. 330, 338, 78 L. Ed. 674, 687, 'But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.' " (Our emphasis.)

The Superior Court of New Jersey, Appellate Division, affirmed a conviction for possession of narcotics holding that the action of police in "choking" defendant-appellant's confederate to prevent his swallowing narcotics assertedly handed him by defendant-appellant (Santos) should not prevent their lawful use by State as evidence during prosecution. *State* v. *Santos* (1968), 101 N. J. Super 98, 243 A. 2d 274.

The facts are as follows: While under police surveillance, Santos made an apparent open sale of narcotics. When police approached, Santos handed two envelopes to a companion, one Galarza, instructing him to "swallow them." Galarza placed the envelopes in his mouth. A struggle ensued in which one officer grabbed Galarza by the throat and another attempted to pry open his mouth. After all three men had fallen to the ground, the second officer successfully recovered the envelopes which were later proven to contain narcotics.

In affirming the conviction, the court said:

"The police have a right short of outright brutality of a shocking nature to apply such reasonable force to a suspect as is fairly necessary to prevent an imminent destruction of evidence of the commission of crime."

In *United States* v. *Harrison* (1970), 432 F. 2d 1328, the District of Columbia Circuit of the U.S. Court of Appeals affirmed a district court conviction of unlawful sale of heroin. It was held that the action of police in grabbing Harrison by the throat to prevent him from swallowing an envelope of heroin capsules during the execution of a valid warrant was a reasonable action to prevent the destruction of evidence.

Harrison relied heavily on *Rochin* contending that the police action preventing him from swallowing the narcotics was in violation of the Fourth and Fifth Amendments. However, the court dismissed appellant's contention, finding no evidence of undue force or brutality. The court distinguished the case from *Rochin* by pointing out that the officers were acting to prevent the destruction of evidence *during the execution of a valid warrant.*

In the case at bar, the officers were engaged in the execution of a search warrant for stolen merchandise and heroin. Foxall was placed under arrest, and as one officer prepared to search his person, he was observed placing something in his mouth. These circumstances provided the officers with probable cause to suspect that Foxall was attempting to conceal or destroy evidence. The officers were justified in using reasonable force to prevent destruction of the evidence.

Foxall and the officers' accounts of the struggle are in conflict. The evidence most favorable to the State reveals that Foxall struggled violently to prevent the extraction of the heroin from his mouth.

One of the officers grabbed Foxall's arm as he raised his hand to his mouth. Both lost their balance and fell over a

chair to the floor. The "shoe horn" was inserted into Foxall's mouth only after he had bitten the fingers of two of the officers. One of the officers involved testified that he feared Foxall would suffer great harm should he swallow heroin.

Each case of this type must necessarily be decided on its own facts. Given the particular facts and circumstances of the case at bar, we cannot conclude that the officers used unreasonable or disproportionate force in preventing Foxall from destroying the evidence of his crime. It is evident that Foxall's own exertions supplied much of the physical energy expended during the encounter.

The difficulty of deciding cases of this nature was anticipated by our Supreme Court in *Alldredge* v. *State* (1958), 239 Ind. 256, 156 N.E.2d 888, wherein the court commented:

"We recognize the line to be drawn between the use of a stomach pump and the taking of finger prints or the examination for identification marks is rather difficult. We are not unmindful that hypothetical situations can be imperceptibly shaded from one field to the other by seemingly logical extensions. We frequently have such twilight zones in the law where nevertheless a line must be drawn between night and day, or right and wrong. Those are hard but unavoidable problems for the courts. The Constitution is intended to preserve practical and substantial rights, not mere theories."

The trial court did not err in overruling appellant's Motion to Suppress.

Judgment affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 298 N.E.2d 470.