# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JEFFREY ELFTMAN**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana



FILED
Sep 12 2012, 9:55 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEZMON GAINES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 34A05-1201-CR-21 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable William C. Menges, Judge
Cause No. 34D01-1107-FD-570

**September 12, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Dezmon Gaines (Gaines), appeals the trial court's denial of his motion to suppress the evidence.

We affirm.

## ISSUES

Gaines raises two issues on interlocutory appeal, which we restate as:

(1) Whether Indiana Code section 9-19-19-4, which prescribes the requirements for a vehicle's tinted windows, is void for vagueness; and

(2) Whether Gaines' search was reasonable.

## FACTS AND PROCEDURAL HISTORY

On July 7, 2011, Sergeant Tonda Cockrell with the Kokomo Police Department (Officer Cockrell) was attempting to locate a missing woman in the area of 1800 North Purdum in Kokomo, Indiana. During her search, Officer Cockrell received information that the woman might be associated with Jeremy Wilson (Wilson), who drove a black Cadillac or a tan Buick. While driving in the area of where Wilson was known to live, Officer Cockrell noticed a black Cadillac with tinted windows. Because she was driving an unmarked police vehicle and was not in uniform, she called for a marked unit to conduct a traffic stop of the Cadillac for having illegally tinted windows.

Kokomo Police Officers Bruce Rood (Officer Rood) and Thomas Mygrant (Officer Mygrant) responded to her call. The Officers stopped the vehicle in the Elks Lodge parking lot. As Officer Rood approached the window he could see people inside

the car but could not tell how many people there were "until the window was rolled down." (Transcript p. 25). After the window was down, Officer Cockrell noticed Gaines on the back seat. He had something in his mouth that he was chewing. Officers Rood and Cockrell both went to the car's passenger side where Officer Rood ordered Gaines out of the vehicle. A strong odor of marijuana emanated from the vehicle.

Officer Rood placed Gaines in handcuffs. He briefly searched Gaines for weapons and detected what he believed to be a baggie containing marijuana in Gaines' front pocket. Officer Rood did not take the baggie out of the pants' pocket; instead, he placed his tazer in the small of Gaines' back and ordered him to spit out the object in his mouth or he would be tazed. Gaines complied with the order and he spit out a baggie containing a substance that resembled rock cocaine.

On July 8, 2011, the State filed an Information charging Gaines with Count I, possession of cocaine, a Class D felony, Ind. Code § 35-48-4-6(a); Count II, dealing in marijuana, a Class D felony, I.C. §§ 35-48-4-10(a)(2); -(b)(1)(B); and Count III, possession of marijuana, a Class D felony, I.C. § 35-48-4-11(1). On November 1, 2011, Gaines filed a motion to suppress the evidence resulting from an invalid traffic stop and an illegal search. On December 16, 2011, the trial court conducted a hearing on Gaines' motion, at the conclusion of which the trial court denied the motion to suppress evidence. On December 27, 2011, Gaines requested certification to pursue an interlocutory appeal, which the trial court granted on the same day. On February 24, 2012, we accepted the interlocutory appeal.

Additional facts will be provided as necessary.

3

DISCUSSION AND DECISION

## I. *Standard of Review*

When reviewing a ruling on a motion to suppress, we consider the evidence most favorable to the ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. *Williams v. State*, 754 N.E.2d 584, 587 (Ind. Ct. App. 2001), *trans. denied*. Where the evidence is conflicting, we consider only the evidence favorable to the ruling. *Id*. We will affirm if the decision is supported by substantial evidence of probative value. *Id*.

## II. *Traffic Stop*

First, Gaines contends that the trial court abused its discretion when it declared the Officers' traffic stop to be legal because of the vehicle's illegally tinted windows. An officer may stop a vehicle when he observes minor traffic violations. *Williams*, 754 N.E.2d at 587. Indiana Code section 9-19-19-4(c) provides in pertinent part:

> A person may not drive a motor vehicle that has a:
> (1) windshield;
> (2) side wing;
> (3) side window that is part of a front door; or
> (4) rear back window
>
> that is covered by or treated with sunscreening material or is tinted to the extent or manufactured in a way that the occupants of the vehicle cannot be easily identified or recognized through that window from outside the vehicle. However, it is a defense if the sunscreening material applied to those windows has a total solar reflectance of visible light of not more than twenty-five percent (25%) as measured on the nonfilm side and light transmittance of at least thirty percent (30%) in the visible light range.

Focusing on the statutory requirement that the infraction is established when the vehicle's occupants "cannot be easily identified or recognized," Gaines asserts that this

4

qualification is void for vagueness because the statute "does not state if identification of race, gender, and number of passengers is sufficient or if window tinting must be such that every feature of every person can be seen." (Appellant's Br. p. 6).

Upon a challenge that a statute is unconstitutional we presume the statute is constitutional. *Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008). The burden is on the defendant to rebut this presumption and we resolve all reasonable doubts in favor of the constitutionality of the statute. *Id.* A criminal statute may be void for vagueness for either of two independent reasons: (1) for failing to provide notice enabling ordinary people to understand the conduct that it prohibits, and (2) for the possibility that it authorizes or encourages arbitrary or discriminatory enforcement. *Brown v. State*, 868 N.E.2d 464, 467 (Ind. 2007). Where, as here, the defendant asserts the second prong, the statute must include a line of demarcation between trivial and substantial acts in order to avoid arbitrary or discriminatory enforcement of the statute. *Id.* Assessment of a vagueness challenge is limited to the facts and circumstances of each case. *Id.*

Although we agree that the statute omits a definition of "identified" or "recognized," the statute does delineate a scientifically objective measurement for compliance within its context. As such, the statute imposes firm boundaries on the window tint, thereby precluding any arbitrariness or discriminatory enforcement by police officers.

Moreover, the statute as applied to the current situation did not invite "overly broad discretion by police." (Appellant's App. p. 7). During the hearing on the motion

5

to suppress, Officer Rood, who conducted the traffic stop, testified that upon approaching the vehicle, he could not see through the windshield into the car. He stated that he could "see people but [he] couldn't see what was going on, the windows were tinted too much." (Tr. p. 25). Officer Rood clarified that he could not tell how many people were inside the car until the window was rolled down. Although Officer Cockrell stated during the hearing that she could see through the window and notice the "nervous state of the people inside" as well as the race and gender of the driver, we are mindful that where the evidence is conflicting, we only consider the evidence favorable to the ruling. (Tr. p. 17). *See Williams*, 754 N.E.2d at 587. Therefore, based on Officer's Rood testimony, we find substantial evidence of probative value to affirm the trial court's ruling.

## III. *Search*

Next, Gaines alleges that the trial court erred when it found Officer Rood's search of Gaines to have been reasonable. Specifically, Gaines claims that Officer Rood's threat of using a tazer to induce Gaines to spit out what he was chewing after smelling an odor of marijuana coming from the car was unreasonable.

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures of persons and property by requiring a warrant based on probable cause. *Moore v. State*, 827 N.E.2d 631, 637 (Ind. Ct. App. 2005), *reh'g denied, trans. denied*. Probable cause exists when an officer has knowledge of facts and circumstances that would lead a reasonably prudent person to believe a crime has been committed. *Id*. However, it is axiomatic that warrants, both search and arrest, are required unless probable cause exists along with exigent circumstances rendering it

6

impractical to seek a warrant. *Id*. Exigent circumstances may include danger to law enforcement officers or the risk of loss or destruction of evidence. *Id*. Absent probable cause, exigent circumstances alone are insufficient to justify a warrantless seizure. *Id*.

Officers Rood and Cockrell testified that when they opened up the passenger door, an odor of marijuana emanated from the vehicle. At the same time, all three Officers noticed Gaines chewing on something in his mouth. Both Officers Rood and Cockrell stated that they believed Gaines was attempting to swallow some type of narcotic or other contraband. Based on these circumstances, we conclude that a reasonably prudent person could believe that Gaines was attempting to destroy contraband. Therefore, probable cause existed for Gaines' warrantless search.

Gaines now points to *Conwell v. State* 714 N.E.2d 764 (Ind. Ct. App. 1999) as support for his argument that the means used by Officer Rood—*i.e.*, the threat to use a tazer—to compel Gaines to spit out the contraband were unreasonable. In *Conwell*, Conwell, on probation at the time, was stopped for travelling at a high rate of speed in an area known to be a "high narcotics area." *Id*. at 766. Because of the officer's experience that individuals hide their narcotics "either in their mouth or in between the crack of their buttocks," the officer requested Conwell to open his mouth and to lift his tongue. *Id*. Conwell did not comply but the officer observed that Conwell began to make a chewing motion. *Id*. The officer testified that he neither saw Conwell place anything in his mouth nor did he see Conwell chewing on an object. *Id*. Failing to get compliance, the officer began to choke Conwell. *Id*. A struggle ensued which only ended after Conwell was maced twice with CS spray. *Id*.

In analyzing the reasonableness of the means used to compel compliance, the *Conwell* court adopted the three-part balancing test of *Winston v. Lee*, 470 U.S. 753, 761-62, 105 S. Ct. 1611, 1617-18, 84 L.Ed.2d 662 (1985). The *Winston* test requires the reasonableness of force used during a body search procedure to be measured against (1) the extent to which the procedure used may threaten the safety or health of the individual, (2) the extent of the intrusion upon the individual's dignitary interests in personal privacy and bodily integrity, and (3) the community's interest in fairly and accurately determining guilt or innocence. *Id*. Balancing these factors, the *Conwell* court focused on the method of force, as it found a choke hold to be dangerous, with a risk of serious injury to Conwell. *Conwell*, 714 N.E.2d at 768. As such, the court determined that the use of the choke hold amounted to unreasonable force. *Id*. at 769.

The *Conwell* court distinguished its situation from *Foxall v. State*, 298 N.E.2d 470 (Ind. Ct. App. 1973). In *Foxall*, officers inserted a plastic shoehorn in Foxall's mouth to facilitate the removal of the contents in his mouth after Foxall had bitten the fingers of two of the officers. *Id*. at 477. The *Foxall* court determined the use of force to have been reasonable as Foxall's air flow had not been restricted. *Id*.

Here, we cannot conclude that Officer Rood used unreasonable force by ordering Gaines to spit out the contraband under threat of using a tazer. Unlike *Conwell*, Gaines was not choked and he was not maced. Gaines was only told that he would be tazed if he did not comply with the Officer's order. No amount of physical force was used and there was no risk to Gaines' physical safety. There was no intrusion on Gaines' bodily integrity by uttering a threat. At no time was Gaines' airflow restricted. Consequently,

8

balancing the *Winston* factors, we cannot conclude that the issuance of a verbal threat amounted to unreasonable force.  We affirm the trial court.

CONCLUSION

Based on the foregoing, we conclude that Indiana Code section 9-19-19-4 is not void for vagueness and the Officer's search of Gaines was reasonable.

Affirmed.

BAILEY, J. concurs

CRONE, J. concurs in result