# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RODREGUS MORGAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-CR-386 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Reuben B. Hill, Judge
The Honorable David Hooper, Master Commissioner
Cause No. 49F18-1208-FD-60696

February 13, 2014

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant, Rodregus J. Morgan (Morgan), appeals his conviction for public intoxication, a Class B misdemeanor, Ind. Code § 7.1-5-1-3, and disorderly conduct, a Class B misdemeanor, I.C. § 35-45-1-3(a).

We affirm in part and reverse in part.

## ISSUES

Morgan raises three issues on appeal, two of which we find dispositive and restate as the following:

(1) Whether Indiana's public intoxication statute is unconstitutionally vague; and

(2) Whether there is sufficient evidence to sustain Morgan's conviction for disorderly conduct.

## FACTS AND PROCEDURAL HISTORY

On the morning of August 31, 2012, Officer Brycen Garner (Officer Garner) of the Indianapolis Metropolitan Police Department (IMPD) was working for his part-time employer, IndyGo Bus Service. While stationed at a bus stop located on Ohio Street in Indianapolis, Indiana, Officer Garner overheard yelling coming from inside the plexiglass bus shelter. For a few minutes, Officer Garner observed as Morgan slept on the shelter's bench while Morgan's brother yelled for him to wake up. Having become "concerned for the welfare" of Morgan, Officer Garner, who was dressed in his IMPD uniform, exited his IMPD patrol vehicle and approached the men. (Transcript p. 10). At the time, Morgan and his brother were the only two individuals occupying the bus shelter. As Officer Garner entered the shelter, he detected the odor of alcohol, and Morgan's brother explained to

2

Officer Garner that "he was trying to awake his brother." (Tr. p. 12). Officer Garner tapped Morgan's shoulder, to which Morgan, who is diagnosed as suffering from sleep apnea, "raised his head up, looked at [Officer Garner], and said, 'Get off of me.'" (Tr. p. 13). Morgan dropped his head back down, and Officer Garner informed him that he needed to vacate the bus shelter.

After three or four requests from Officer Garner that Morgan exit the shelter, Morgan, who "seemed very agitated" and "angry in [] demeanor," eventually stood up. (Tr. p. 14). As Morgan stood, Officer Garner discerned that the odor of alcohol was "emitting from [Morgan's] breath and body." (Tr. p. 14). Officer Garner also observed that Morgan's eyes were bloodshot and glassy, and "Morgan was unsteady on his feet . . . he wasn't stumbling but he was swaying from side to side." (Tr. p. 14). Believing Morgan to be intoxicated, "coupled with the fact that . . . his behavior was annoying," Officer Garner placed Morgan under arrest and escorted him to the patrol vehicle to complete the arrest paperwork and conduct a search incident to arrest. (Tr. p. 15). During this time, Morgan "continued to yell and bring undue noise to himself and attention to himself, all the way across the street and at [Officer Garner's] vehicle" and asked Officer Garner if he was "happy with [himself] for locking a brother up[.]" (Tr. pp. 28-29). Officer Garner provided Morgan with multiple warnings "to stop making unreasonable noise and yelling[,]" but Morgan "just continued on this path of saying that he didn't do anything wrong, just very loud and very agitated." (Tr. pp. 28-29). While waiting for a police vehicle to arrive to transport Morgan, Morgan—erroneously believing that he and Officer

Garner had been classmates—told Officer Garner "that he was going to kick [his] ass like he did in high school." (Tr. p. 30).

The same day, the State filed an Information charging Morgan with Count I, intimidation, a Class D felony, I.C. § 35-45-2-1(b); Count II, public intoxication, a Class B misdemeanor, I.C. § 7.1-5-1-3; and Count III, disorderly conduct, a Class B misdemeanor, I.C. § 35-45-1-3(a). Morgan waived his right to a jury trial, and on April 4, 2013, the trial court conducted a bench trial. During the trial, Morgan's counsel moved "to suppress any observations [made] subsequent to the arrest of [Morgan,]" arguing that the recently enacted public intoxication statute, "when referencing annoying behavior, is not meant to refer to the officer himself." (Tr. p. 16). The trial court denied Morgan's motion to suppress. Shortly thereafter, Morgan renewed his motion to suppress, this time arguing that Officer Garner identified Morgan's refusal to leave the bus shelter as the sole basis for finding his behavior annoying, and the legislature could not have intended to expand the statute such that a police officer could make an arrest for any behavior he or she deems to be annoying. In denying Morgan's renewed suppression motion, the trial court stated, "As I picture . . . a scene of somebody passed out, had to be brought to numerous times, who is unsteady on [his] feet with alcohol on [his] breath, I find that this [is] enough to state reasonably that it is annoying." (Tr. p. 27).

After the State rested its case-in-chief, Morgan moved to dismiss the charges for public intoxication and intimidation pursuant to Indiana Trial Rule 41(B). Morgan argued that the public intoxication statute is vague and thus contrary to both the United States Constitution and the Indiana Constitution. The trial court denied Morgan's motion to

4

dismiss with respect to public intoxication because "the proper motion is a pre-trial motion to dismiss and . . . the Attorney General needs to be on notice." (Tr. p. 40). However, the trial court granted Morgan's motion to dismiss Count I, intimidation, because the State had charged Morgan under the wrong portion of the statute. At the close of the evidence, the trial court entered a guilty verdict as to Counts II and III, public intoxication and disorderly conduct. Immediately thereafter, the trial court sentenced Morgan to two concurrent sentences of 180 days, with sixteen days executed and 164 days suspended to probation.

Morgan now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Constitutionality of Public Intoxication Statute*

Morgan claims that Indiana Code section 7.1-5-1-3, which states that it is a Class B misdemeanor if an individual is intoxicated while in a public place and "harasses, annoys, or alarms another person[,]" is unconstitutionally vague. I.C. § 7.1-5-1-3(a)(4). Specifically, Morgan argues that "the statute fails to define 'annoys,' and there is no objective standard for evaluating what 'annoys'" constitutes. (Appellant's Br. p. 7). Morgan also contends that the statute encourages arbitrary and discriminatory enforcement. In response, the State contends that Morgan has waived the issue on appeal by failing to challenge the statute's constitutionality through a pre-trial motion to dismiss.

A. *Waiver*

In general, a party's "failure to file a proper motion to dismiss raising a constitutional challenge to a criminal statute waives the issue on appeal." *Lee v. State*, 973 N.E.2d 1207, 1209 (Ind. Ct. App. 2012), *trans. denied*. Yet, even in cases where the

5

defendant has failed to file the necessary motion to dismiss, Indiana's appellate courts have, at times, considered claims that a statute is unconstitutional. *Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008). In fact, our supreme court has previously determined that "the constitutionality of a statute may be raised at any stage of the proceeding." *Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992).

In this case, Morgan did not file a motion to dismiss twenty days prior to the omnibus date, as required by Indiana Code section 35-34-1-4(a)(1),(b) and section 35-34-1-6(a)(3). He did, however, move for dismissal during the bench trial and cited authority in support of his argument that the statute is unconstitutionally vague. *See Adams v. State*, 804 N.E.2d 1169, 1172 (Ind. Ct. App. 2004) (finding defendant waived constitutional challenge where he "failed to file a motion to dismiss, and he did not object to the constitutionality of the statute at trial"). Accordingly, we elect to address the merits of Morgan's claim.

## B. *Vagueness*

Whether a statute is unconstitutional is a question of law, which we review *de novo*. *Lee*, 973 N.E.2d at 1209. When considering a statute's validity, we begin with a presumption that it is constitutional. *Price v. State*, 911 N.E.2d 716, 719 (Ind. Ct. App. 2009), *trans. denied*. The defendant bears the burden of rebutting this presumption, and we will resolve all doubts in favor of the statute's constitutionality. *Duncan v. State*, 975 N.E.2d 838, 844 (Ind. Ct. App. 2012).

In 2012, the General Assembly amended Indiana's public intoxication statute, which now provides that

6

it is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance . . . if the person:
(1) endangers the person's life;
(2) endangers the life of another person;
(3) breaches the peace or is in imminent danger of breaching the peace; or
(4) harasses, annoys, or alarms another person.

I.C. § 7.1-5-1-3(a). Due process principles advise that a penal statute is unconstitutionally vague if it fails to clearly define what conduct is prohibited. *Weideman v. State*, 890 N.E.2d 27, 31 (Ind. Ct. App. 2008). Morgan contends that "[t]he public intoxication statute is void for vagueness because the term 'annoys' criminalizes behavior depending on the subjective sensitivities of each individual, and it fails to provide sufficiently definite warning as to the proscribed conduct when measured by common understanding." (Appellant's Br. p. 6). In turn, the State argues that

[a]ny reasonable person is on notice under this statute that intoxicated annoyance of others in public is prohibited conduct. A person of ordinary intelligence certainly would know that lying drunk in a public bus shelter that the general public uses throughout the day for transportation constitutes conduct that would annoy others, especially when the intoxicated person angrily and continually refuses to move when asked to do so by another person.

(State's Br. pp. 8-9).

A criminal statute may be found unconstitutionally vague if it either: (1) fails "to provide notice enabling ordinary people to understand the conduct it prohibits," or (2) "authorizes or encourages arbitrary or discriminatory enforcement." *Adams v. State*, 968 N.E.2d 281, 285 (Ind. Ct. App. 2012), *trans. denied*. The statute must "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden so that 'no man shall be held criminally responsible for conduct which he could not reasonably understand

7

to be proscribed.'" *Kaur v. State*, 987 N.E.2d 164, 168 (Ind. Ct. App. 2013) (quoting *Healthscript, Inc. v. State*, 770 N.E.2d 810, 816 (Ind. 2002)). Fair notice does not require that a statute "specifically list all items of prohibited conduct." *Adams*, 968 N.E.2d at 285. However, "'there must be something in a criminal statute to indicate where the line is to be drawn between trivial and substantial things so that erratic arrests and convictions for trivial acts and omissions will not occur. It cannot be left to juries, judges, and prosecutors to draw such lines.'" *Kaur*, 987 N.E.2d at 168 (quoting *State v. Downey*, 476 N.E.2d 121, 123 (Ind. 1985)). A vagueness challenge that does not concern First Amendment rights is "examined in light of the facts of that particular case." *Price*, 911 N.E.2d at 719. A defendant may not formulate "hypothetical situations which might demonstrate vagueness." *Kaur*, 987 N.E.2d at 169. It is also well-established that a statute is not unconstitutionally vague just because it does not provide a specific definition. *Wright v. State*, 772 N.E.2d 449, 457 (Ind. Ct. App. 2002).

Morgan has raised an issue of first impression as Indiana courts have not previously construed the term "annoys" in the context of the public intoxication statute. Generally, statutorily undefined words are given their plain, ordinary, and usual meaning. *Weideman*, 890 N.E.2d at 32 (citing I.C. § 1-1-4-1(c)). To ascertain how ordinary people understand statutory terms, courts may consult dictionaries. *Houston v. State*, 898 N.E.2d 358, 362 (Ind. Ct. App. 2008), *trans. denied*. "Annoy" has been defined as: "to disturb or irritate especially by repeated acts" or "to harass especially by quick brief attacks." MERRIAM-WEBSTER.COM. We find that this definition may encompass a vast array of human behavior, and the statute provides no guidance for distinguishing between acceptable and

8

annoying conduct. *See Brown v. State*, 868 N.E.2d 464, 468 (Ind. 2007). Our court has previously addressed the constitutionality of other laws with similar language, and we find two decisions particularly instructive.

First, in *Kinney v. State*, 404 N.E.2d 49 (Ind. Ct. App. 1980), this court upheld the constitutionality of Indiana's harassment statute, which prohibits a person from calling, corresponding, or otherwise attempting to contact another individual "with *intent to harass, annoy, or alarm another person* but with no intent of legitimate communication." *Id.* at 50 (emphasis added) (quoting I.C. § 35-45-2-2(a)). Because the statute requires that a "specific act" be "accompanied by a specific intent," we held that it was not void for vagueness. *Id.* at 51. We further noted that a defendant cannot "be said to suffer from lack of warning or knowledge that the act which he does is a violation of law" where a statute imposes punishment "only for an act knowingly done with the purpose of doing that which the statute prohibits." *Id.* (quoting *United States v. Nat'l Dairy Corp.*, 372 U.S. 29, 35 (1963)). *See Johnson v. State*, 648 N.E.2d 666, 670 (Ind. Ct. App. 1995) ("That the State must prove the defendant himself entertained specific intent militates against a determination that the statutes are vague.").

Second, in *Lutz v. City of Indianapolis*, 820 N.E.2d 766 (Ind. Ct. App. 2005), this court addressed the constitutionality of a city noise ordinance, which made it "unlawful for any person to make, continue or cause to be made or continued any loud, unnecessary or unusual noise, or *any noise which either annoys*, disturbs, injures or endangers the comfort, repose, health and peace or safety of others within the city." *Id.* at 768 (emphasis added). We found this language lacked "an objective test" to "enable individuals of ordinary

9

intelligence to adequately comprehend what conduct the [o]rdinance" prohibited. *Id.* at 769. Because the ordinance failed to "include a sufficiently ascertainable standard of conduct[,]" a reasonableness test that would "provide[] an intelligible enforcement guideline for police officers and prosecutors," or a warning requirement to protect "those individuals who might not realize that their noise was unreasonable[,]" we held that it was unconstitutionally vague. *Id.* at 769-71. *See id.* at 769 (distinguishing *Price v. State*, 622 N.E.2d 954 (Ind. 1993), where our supreme court upheld the constitutionality of the disorderly conduct statute against a vagueness challenge because the statute "is narrowly tailored to prohibit 'unreasonable' noise made only after an individual has been warned about his conduct"). *See also Price*, 911 N.E.2d at 720 ("[A] reasonableness standard contained in a statute provides 'a constraining and intelligible enforcement standard for those charged with enforcing the statutes.'" (quoting *Johnson*, 648 N.E.2d at 670)).

Additionally, Morgan relies on *Coates v. Cincinnati*, 402 U.S. 611 (1971), where the United States Supreme Court declared that, on its face, a city ordinance prohibiting "three or more persons" from assembling on a city sidewalk "and there conduct[ing] themselves in a manner annoying to persons passing by[,]" was unconstitutionally vague. *Id.* at 612, 616. Finding the ordinance "subjects the exercise of the right of assembly to an unascertainable standard," the Supreme Court stated,

> Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, "men of common intelligence must necessarily guess at its meaning."

10

*Id.* at 613-14 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). The State asserts that Morgan's reliance upon *Coates* "is unavailing" because "[t]he long established purpose of the public intoxication statute is 'to protect the public from the annoyance and deleterious effects which may and do occur because of the presence of persons who are in an intoxicated condition.'" (State's Br. p. 10) (quoting *State v. Sevier*, 20 N.E. 245, 246-47 (Ind. 1889)). While the State is correct about the purpose, our State's courts have established that a penal statute must include some "scientifically objective measurement for compliance" so that the public is aware of the conduct that will subject them to arrest. *Gaines v. State*, 973 N.E.2d 1239, 1243 (Ind. Ct. App. 2012).

Comparing our prior decisions to the case at hand, we find the challenged portion of Indiana's public intoxication statute to be unconstitutionally vague. Namely, the statute neither requires that a defendant have specifically intended to annoy another, nor does it employ an objective standard to assess whether a defendant's conduct would be annoying to a reasonable person. Furthermore, the statute does not mandate that the defendant have been first warned that his behavior was considered annoying conduct. Instead, this section of the statute enables arbitrary and discriminatory enforcement because the illegality of any conduct—no matter how trivial or how substantial—is based solely on the subjective feelings of a particular person at any given time. *See id.*

### C. *Severability*

It is a well-established rule of statutory construction that if, after striking a portion of a statute as unconstitutional, the "remainder, standing alone, is complete, sensible, and capable of execution, it is our duty to separate and reject the invalid section of the [statute]

11

and allow the valid remainder of the [statute] to stand." *Lutz*, 820 N.E.2d at 770. Here, we hold only that the term "annoying" is void for vagueness. As the removal of "annoying" from the section does not inhibit the statute's execution, the remainder of Section (a) stands.

## II. *Sufficiency of Evidence*

Morgan next claims there is insufficient evidence to sustain his conviction for disorderly conduct.[1] When reviewing the sufficiency of evidence, we do not reweigh evidence or judge the credibility of witnesses. *Mathews v. State*, 978 N.E.2d 438, 442-43 (Ind. Ct. App. 2012), *trans. denied*. We will consider only the probative evidence that supports the trial court's judgment—and any reasonable inferences drawn therefrom—to determine whether a reasonable trier of fact could conclude that the defendant is guilty beyond a reasonable doubt. *Holbert v. State*, 996 N.E.2d 396, 400 (Ind. Ct. App. 2013). We will uphold the conviction if it is supported by substantial evidence of probative value. *Id.* at 400-01.

"A person who recklessly, knowingly, or intentionally" . . . makes unreasonable noise and continues to do so after being asked to stop . . . commits disorderly conduct, a Class B misdemeanor." I.C. § 35-45-1-3(a)(2). Morgan does not challenge the sufficiency of the evidence under the statute itself. Rather, he argues that his "criticism of his arrest

---

[1] Morgan also asserts that there is insufficient evidence to uphold his conviction for public intoxication. Because we find the portion of the public intoxication statute under which Morgan was charged is unconstitutionally vague, we need not address this issue.

12

constituted free speech" protected under Article 1, Section 9 of the Indiana Constitution."[2] (Appellant's Br. p. 13).

In reviewing the constitutionality of Morgan's disorderly conduct conviction, we employ a two-part analysis. *Martin v. State*, 908 N.E.2d 285, 287 (Ind. Ct. App. 2009). First, we must decide whether the State restricted Morgan's expressive activity. *Id.* Second, if the State did restrict expressive activity, we must determine whether Morgan abused his right to speak. *Id.* We will uphold the State's determination that a defendant has abused his right to speak so long as that determination was rational. *Id.* at 288. However, if a defendant's "expressive activity was political in nature, the State must demonstrate that it did not materially burden the defendant's opportunity to engage in political expression." *Id.* If the expressive activity focuses on the speaker's own conduct, the expression is not political. *Dallaly v. State*, 916 N.E.2d 945, 952 (Ind. Ct. App. 2009). "Expressive activity is political if its aim is to comment on government action, including criticism of an official acting under color of law." *Martin*, 908 N.E.2d at 288. A defendant bears the burden of establishing that his expressive activity was political. *Id.* We review the nature of the expression using an objective standard. *Blackman v. State*, 868 N.E.2d 579, 585 (Ind. Ct. App. 2007), *trans. denied*. If there is ambiguity in the nature of the speech, we must find that the speech is not political. *Id.*

---

[2] Morgan did not raise a constitutional claim during the trial; in fact, Morgan's counsel informed the trial court that Morgan was "willing to cop to the disorderly charge" because he "was disorderly with the interaction with the officer." (Tr. p. 51). As our supreme court has established, "the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue *sua sponte*" by the court. *Morse*, 593 N.E.2d at 197.

13

In this case, the record reveals that Morgan was charged with disorderly conduct for making unreasonable noise subsequent to his arrest for public intoxication. Officer Garner testified that "Morgan continued to yell and bring undue noise to himself and attention to himself" despite "three or four" warnings to stop. (Tr. p. 28). Thus, the State restricted Morgan's expressive activity. *See Dallaly*, 916 N.E.2d at 952. As to the second prong of the test, Morgan "must prove that 'the State could not reasonably conclude that the restricted expression was an "abuse" of [his] right to speak, and therefore, the State could not properly proscribe the conduct, pursuant to its police power, via the disorderly conduct statute.'" *Blackman*, 868 N.E.2d at 585 (alteration in original) (quoting *Johnson v. State*, 719 N.E.2d 445, 449 (Ind. Ct. App. 1999)). According to Officer Garner,

> Morgan was very, very agitated and annoyed. He was – he was disturbed by me in his tone and angry. He stated, am I happy with myself for locking a brother up? He just continued on this path of saying that he didn't do anything wrong, just very loud and very agitated.

(Tr. p. 29).

We find ambiguity in the nature of Morgan's comments. Although we might infer that Morgan was objecting to the legality of his arrest by Officer Garner, his repeated statements that "he didn't do anything wrong" seem to be directed to his own conduct rather than that of Officer Garner. (Tr. p. 29). *See Whittington v. State*, 669 N.E.2d 1363, 1370-71 (Ind. 1996) (finding expression not political where the defendant "protested that he had not done anything and that the other witnesses were lying" because the "statements involve the conduct of private individuals, not state action"). Accordingly, we must find the expression was not political and review the restriction of Morgan's speech under

14

standard rational review. The record reveals that, despite numerous warnings from Officer Garner, Morgan yelled and made unreasonable noise, even threatening to "to kick [Officer Garner's] ass." (Tr. p. 30). We therefore find that there was sufficient evidence for the State to determine that Morgan had abused his right to speak.[3]

## CONCLUSION

Based on the foregoing, we conclude that Section (a)(4) of the public intoxication statute is unconstitutionally vague and cannot be the basis of Morgan's conviction. We also conclude that there is sufficient evidence to uphold Morgan's conviction for disorderly conduct.

Affirmed in part and reversed in part.

VAIDIK, C.J. and MAY, J. concur

---

[3] Because we find there is sufficient evidence in support of disorderly conduct, we do not address the State's argument that Morgan invited the trial court to convict him of disorderly conduct and "cannot now take advantage of that error on appeal." (State's Br. pp. 14-15).